UNITED STATES of America,
Plaintiff-Appellee,

v.

Andrew J. BENIACH, Jr., and Neil Mueller, Defendants-Appellants.

Nos. 86–2442, 86–2571.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1987.

Decided Aug. 6, 1987.

As Amended Aug. 17, 1987.

Diana N. Cherry, Metnick & Barewin, Springfield, Ill., Stephen P. Hurley, Aagaard, Hurley, Burish & Milliken, Madison, Wis., for defendants-appellants.

Richard N. Cox, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., U.S. Attys. Office, Springfield, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

The defendants-appellants on this consolidated criminal appeal, Andrew J. Beniach, Jr. and Neil Mueller, seek review of their convictions for conspiracy to manufacture and distribute marijuana in violation of Title 21, United States Code, Section 846. Specifically, Beniach maintains that he was denied the effective assistance of independent counsel at a suppression hearing prior to trial. Because we believe Beniach made a knowing waiver of his right to conflict-free representation, we affirm his conviction. Mueller argues that his conviction should be overturned on two grounds. Initially, he challenges the sufficiency of the evidence used to convict him. He also contends that the trial court's refusal to dismiss a juror who had been exposed to media coverage of the case constitutes reversible error. We reject both of Mueller's contentions and affirm his conviction.

## I.

### Facts

In 1985, defendant Beniach's two sons, Marshall and Michael, along with Ron Edwards, rented a parcel of farm land near Time, Illinois. On September 30, 1985, while conducting aerial surveillance, a state police pilot observed several patches of marijuana growing throughout a field on the aforementioned property. Thereafter, law enforcement agents conducted an intense surveillance of the cornfield which included the use of sensor alarms at each entrance of the property to detect activity and thereby alert the agents to determine what was transpiring.

After initially observing Michael Beniach and Ron Edwards at the field, agents were alerted to the presence of a red harvesting combine and two pick-up trucks located at one of the entrances to the property on October 22, 1985. The following day, the agents observed several trucks belonging to the various defendants including a white Ford feed truck owned by defendant Mueller which arrived just before 1:00 p.m.

Throughout the afternoon, agents heard the combine harvesting the field and ob-

served three loads of corn being removed including one in Mueller's feed truck. At the same time however, an agent maintaining aerial surveillance witnessed the disappearance of marijuana from the field. Moreover, the surveillance pilots noted the unusual operation of the combine which appeared to be "just opening up enough of the fields ... to get to the marijuana patches."

At approximately 8:00 p.m., the harvesting operations ceased and three vehicles left the field together proceeding to a farmhouse rented by the Beniach brothers and Ron Edwards. Those vehicles included Andrew Beniach's pick-up truck, Michael Beniach's pick-up truck, and Mueller's feed truck. After establishing a surveillance position across from the farmhouse, agents observed five males walk from the rear of a large shed adjacent to the house.

Shortly thereafter, Mueller's feed truck was observed leaving the farmhouse. Agents also observed Andrew Beniach's truck depart, as well as several other vehicles. Just after leaving the farmhouse, each vehicle was stopped by law enforcement personnel. Mueller was the sole occupant of his truck. His clothing smelled of marijuana and loose quantities of marijuana were found on both the rear ledge and in the bed of the truck. Additionally, a pair of pruning shears found on the front floorboard of the truck contained a small quantity of marijuana.

When stopped, Andrew Beniach's pick-up truck was occupied by Andrew Beniach and his son, Marshall. Agents testified that the cab of the truck smelled of marijuana and the clothing of both Andrew and Marshall contained small amounts of loose marijuana. Additionally, three loaded firearms and a large quantity of ammunition was recovered from the truck.

The following day, agents searched the farmhouse and adjacent shed pursuant to federal search warrants. The shed contained large quantities of drying marijuana plants hanging upside down from its rafters. Many of the plants had been freshly cut. A search of the farmhouse revealed that its entire second floor was covered with drying marijuana and contained various marijuana processing items ranging from dehumidifiers to scales and plastic bags.

## II.

### Ineffective Assistance of Counsel

Each of the six defendants was charged in a three count complaint in the United States District Court for the Central District of Illinois. Initially, five of the defendants, including Andrew Beniach, were represented by the same attorney—Michael J. Costello. Mueller was represented separately by Walter H. Kasten. Prior to trial, Mr. Costello filed separate motions on behalf of each defendant to suppress evidence obtained from the farmhouse and the field. The motions alleged that property confiscated from the defendants was seized as a result of an unlawful aerial surveillance and warrantless entries into the field. Individual motions to suppress evidence obtained at the time of arrest were also filed asserting lack of probable cause.

On March 27, 1986, the trial court conducted a final pretrial conference and a hearing on the motions. Prior to the hearing, the Assistant United States Attorney recommended that the court make inquiry of each defendant pursuant to FED.R. CRIM.P. 44(c), regarding multiple representation. The court addressed all of the defendants represented by Costello regarding the potential conflict of interest arising from joint representation. Indeed, Judge Mills went to great lengths to alert the defendants to the possibility for such a problem, including an illustration by the Assistant United States Attorney of how such a conflict would, in fact, arise in this case.

Each defendant, including Andrew Beniach, declared in open court that they waived any possible conflict of interest arising from Mr. Costello's multiple representation. Subsequently, each defendant also submitted a written waiver to the court. Judge Mills proceeded to hear the defendants' motions to suppress evidence and subsequently denied the same. Thereafter, Andrew Beniach obtained new coun-

sel and filed a second motion to suppress evidence alleging that his arrest lacked probable cause. Citing his consideration of the probable cause issue on the defendants' initial motion, Judge Mills refused Beniach's request for a second hearing[1] and denied his motion to suppress. Beniach and Mueller were subsequently convicted and sentenced to 5 and 9 years imprisonment respectively. The remaining defendants pled guilty prior to trial.

■ Beniach appeals his conviction contending that he was denied the effective assistance of counsel due to a conflict of interest arising from Mr. Costello's multiple representation of Beniach and his co-defendants at the pretrial suppression hearing. Beniach maintains that during the suppression hearing his legal interests would have been served best by establishing the obvious criminal activity of his co-defendants while contrasting the lack of probable cause to arrest him. However, while it is clearly recognized that a criminal defendant is entitled to legal representation undiluted by conflicting loyalties, *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Bradshaw*, 719 F.2d 907 (7th Cir.1983); *United States ex rel. Williams v. Franzen*, 687 F.2d 944 (7th Cir.1982); *United States ex rel. Robinson v. Housewright*, 525 F.2d 988 (7th Cir.1975); it is equally obvious that such a right may be waived by a criminal defendant in selecting counsel of his choice. *See Holloway v. Arkansas*, 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978) (citing *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Bradshaw*, 719 F.2d at 911. Moreover, once having made a knowing and intelligent waiver, a criminal defendant may not later attack his conviction premised upon an assertion of conflict. *Bradshaw*, 719 F.2d at 911; *see also United States v. Cirrincione*, 780 F.2d 620 (7th Cir.1985); *United States ex rel. Tonaldi v. Elrod*, 716 F.2d 431 (7th Cir.1983); *United States v. Gaines*, 529 F.2d 1038 (7th Cir. 1976).

The elusive concept of a knowing and intelligent waiver first set forth by the Supreme Court in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), continues to defy precise definition. In subsequent attempts to refine this standard, the Court has stated that a waiver is effective if it is made with open eyes, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and must not only be voluntary, "but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). More specifically, the Court has said that "[t]he determination of whether there has been an intelligent waiver ..., must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023.

Andrew Beniach was 50 years old at the time of trial. He held both a bachelor's and master's degree in business education and had been a school teacher for 22 years. Moreover, he was a farmer and operated a tax preparation service from his home for many years. Based upon his level of educational attainment, as well as his employment experience, it is difficult to believe that Beniach was unable to comprehend the potential liability of joint representation, or somehow misconstrued the clear warnings of Judge Mills so as to prevent the submission of a knowing and intelligent waiver.

---

1. Although we find that Beniach made a knowing and intelligent waiver of the right to conflict-free representation, the relatively limited expenditure of judicial resources required to reconsider Beniach's individual motion to suppress evidence submitted after obtaining new counsel, suggests that such a rehearing might be justified, though we do not mean to suggest that the probable cause determination would have differed here.

Moreover, the record indicates that Beniach considered the problem of joint representation prior to the hearing and had decided with the advice of counsel that he would proceed with Mr. Costello as his attorney. Beniach maintains, however, that his "waiver" could not represent a knowing and intelligent relinquishment of his sixth amendment protection given the trial court's inadequate inquiry regarding a potential conflict. Specifically, Beniach contends that the court's warnings only vaguely described, in general terms, the possibility of a conflict without relating to each defendant how the specific facts of the case might pose a conflict for him or her in relation to the others.

▮ Judge Mills counselled each defendant that joint representation engenders a potential that "[t]he interest of one [defendant] may give way to the interest of another, or ... one defendant might be giving evidence that might implicate another defendant in the same trial." In addition, Judge Mills permitted the Assistant United States Attorney to give a detailed illustration of how the testimony of Marshall Beniach would necessarily implicate members of his own family while exculpating himself. An examination of the case law clearly supports our determination that Judge Mills' warnings were sufficient to allow for Beniach's submission of a knowing and intelligent waiver. See *Tonaldi*, 716 F.2d at 438, and cases cited therein. Having made such a waiver, the defendant will not now be heard to complain of a conflict.[2]

### III.
### *Sufficiency of the Evidence*

▮ Neil Mueller complains that the evidence adduced against him at trial was wholly circumstantial and therefore, insufficient to exclude a reasonable doubt as to his participation in the charged conspiracy. In order to establish Mueller's guilt of conspiracy to manufacture or possess marijua-

na with intent to deliver, the government was required to prove that Mueller knew of the conspiracy and that he intended to join and associate himself with that conspiracy. *See United States v. Percival*, 756 F.2d 600, 611 (7th Cir.1985); *United States v. Herrera*, 757 F.2d 144, 149 (7th Cir.1985); *United States v. Perry*, 747 F.2d 1165, 1169 (7th Cir.1984). However, when a defendant is found guilty, "the factfinder's role as weigher of the evidence is preserved through the legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). *United States v. Balistrieri*, 778 F.2d 1226, 1232 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1985). Hence, the reviewing court must employ a "reasonable doubt" test to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Given this weighted standard of review we are unable to reverse the jury's verdict.

The uncontroverted evidence showed that Mueller was present when the Beniach brothers initially rented the farm land from Jay Leahy. Mueller was also present at the field on the day the marijuana was harvested and transported to the farmhouse. Thereafter he spent several hours at the farmhouse which, along with the shed and field, contained over 3,000 pounds of marijuana plants. When Mueller was arrested, his truck contained a small quantity of marijuana on its rear ledge and an additional quantity in the bed of the truck. Finally, small amounts of marijuana were found on a pair of pruning shears recovered from Mueller's truck, as well as on his clothing.

---

**2.** The appellant misconstrues Fed.R.Crim.P. 44(c) by stating that the Rule "imposes a duty upon the trial court to ensure that no [conflict of interest] exists." The language of the Rule itself and the accompanying Advisory Committee

Notes make it clear, however, that the trial court is merely required to ensure that a criminal defendant is apprised of any possible conflict engendered by joint representation which he or she may subsequently waive.

Throughout the trial and now on appeal, Mueller has proffered innocent explanations for his presence during the harvesting operations. However, under the mandate of *Jackson v. Virginia,* where the "factfinder is asked to draw conflicting hypotheses, the reasonable doubt test requires the reviewing court to consider the evidence according to the prosecutor's inferences." *United States v. Moya,* 721 F.2d 606, 610 (7th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984). When presented with the conflicting hypotheses pursued by the government and Mueller, therefore, we are obligated to credit the prosecutor's inferences. Thus, we find that a reasonable trier of fact could conclude that Mueller committed the essential elements of the crime beyond a reasonable doubt.

## IV.

### Impartial Jury

Mueller also seeks the reversal of his conviction based upon the trial court's refusal to dismiss a juror exposed to pretrial and trial publicity. During voir dire, it was discovered that one of the jurors, Mr. Musick, had learned in a broadcast of the guilty pleas entered by others charged in the case. The following colloquy ensued between the court and Mr. Musick:

THE COURT: ... is there any reason then why any of the five of you could not be fair and impartial jurors as far as you are concerned?

And as you sit there, do you think you're of the frame of mind that you would want a juror to be if this was your case on trial? ...

THE COURT: Mr. Musick?

THE JUROR: I would say yes except for maybe what I have heard.

THE COURT: Do you—

THE JUROR: In other words, I think I could judge the facts.

THE COURT: What you have heard you believe you can set out of your mind and try this case only upon the evidence adduced here in open Court?

THE JUROR: I believe I could.

THE COURT: Mr. Musick, we have come back a couple of times to the question of what you had heard or seen or, etc., over there in Quincy.

Now, has what you have heard or seen influenced you to the point where you have any reservations about your ability to be fair to all of the parties in this case?

THE JUROR: I am afraid what I heard would implicate those involved.

THE COURT: In other words, you don't think that you can put it out—completely out of your mind and be absolutely fair and impartial?

THE JUROR: In my opinion, I could take the facts as I see them here—.

THE COURT: Uh-huh.

THE JUROR: And out of—how shall I put it?

THE COURT: Well, when I come—when I come down to that final question, you—you hesitated.

THE JUROR: I think I can separate what I heard here from what I have heard there. However—.

THE COURT: Well, do you think that you're of that frame of mind that you would want a juror to be if this were your case on trial?

THE JUROR: I would have to say yes from the standpoint of separating what I hear in the courtroom.

THE COURT: And you believe that you could do that?

THE JUROR: Yes. (Vol. IV, R. 116–117).

Mueller's motion to exclude Musick for cause was denied and he was included as a member of the jury panel.

The following day it was learned that Musick had also heard a television broadcast announcing the additional guilty pleas of Marshall and Michael Beniach the night before. Again the court inquired as to whether Mr. Musick believed he could serve as a "totally fair and impartial" juror. Mr. Musick reiterated his belief that he could, and the court denied the defendants' motion to exclude.

 Mueller maintains that Mr. Musick's presence on the jury deprived him of an impartial jury as guaranteed by the

sixth amendment. *See Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). However, mere exposure to pretrial publicity will not automatically render a juror impartial. Rather the defendant is still required to demonstrate the juror's actual prejudice resulting from the publicity. *See United States v. Wilson*, 715 F.2d 1164, 1168 (7th Cir.1983); *United States v. Garza*, 664 F.2d 135, 138 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1620, 71 L.Ed.2d 854 (1982). Mueller has failed to demonstrate any actual prejudice resulting from Musick's knowledge that guilty pleas had been entered by other defendants in the case. Indeed, Mueller's attorney did not object to Andrew Beniach's direct testimony which informed the entire jury of Marshall and Michael Beniach's guilty pleas. Moreover, "[i]f a juror can put aside his impressions gained from pretrial publicity and render a fair verdict based upon the evidence the impartiality requirement is satisfied." *Garza*, 664 F.2d at 138. The trial judge's questioning of juror Musick and his candid responses, along with the stated belief that he could decide the case solely on the evidence presented at trial, convinces us that Mueller was tried by an impartial jury.

For the foregoing reasons the defendants' convictions are

AFFIRMED