THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID TICEY, Defendant-Appellant.

First District (2nd Division)   No. 1—88—2815

Opinion filed June 11, 1991.

Randolph N. Stone, Public Defender, of Chicago (Alison Edwards, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and John Guinn, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

After a bench trial, David Ticey was convicted of criminal sexual assault (use or threat of force), criminal sexual assault (by family member against victim under 18 years old), aggravated criminal sexual assault (causing bodily harm) and aggravated criminal sexual as-

sault (threatening or endangering life) against Sherry Johnson. On appeal, he claims that inasmuch as he was found to have committed only one act, he could be convicted of only one count of aggravated criminal sexual assault, and that there was insufficient evidence to support his convictions. He also charges that he was denied a fair trial (1) because of the admission of a prior inconsistent statement of the victim and (2) because certain questions put to the victim by the prosecutor implied, without sufficient support, that she was coerced into recanting that prior statement. Ticey seeks correction of his mittimus to reflect a conviction of only one count of aggravated criminal sexual assault, or a reversal of his convictions, either outright or with a remand for a new trial.

Johnson testified at trial that at the time of the incident she was living with her mother, her baby, and her brother, Ticey. At around 12:30 a.m. on November 13, 1987, a male entered her room, choked her, stuck his nails into her skin and raped her. The assailant was wearing a condom. Her room was dark except for a light shining from a bathroom. Her mother and baby were there at the time, but Ticey, who had been home earlier, had left. Johnson testified that Ticey was not her attacker. She admitted, however, that while in the hospital following the rape she told Detective Ptak of the Chicago police department that Ticey had raped her, basing her accusation on her assailant's voice and on the way he smelled. In response to the question, "Sherry, when you told Detective Ptak when you met him in the hospital that it was your brother, you were sure it was your brother on that date, weren't you?" Johnson stated:

> "Yes, and I was calling for my brother to help me, I was calling, I was scared, I was calling for him to help me and they asked, asking me all the questions at the same time, that's what happened, he was asking me questions and he was asking me questions so I just said David, I said, my brother's name."

Johnson further testified on direct examination that she again, on November 16, 1987, told Ptak and an assistant State's Attorney that her brother had raped her. She also stated that she did not remember whether her mother was with her when she identified her brother during that meeting, but when asked, "Do you remember your mother yelling at you and dragging you out of the office?" she replied, "She didn't get in to get me, she didn't touch me." On cross-examination, however, Johnson stated that she had told Ptak and the assistant State's Attorney during the meeting that she "couldn't be sure" who attacked her.

Ticey called home almost every day from jail in order to talk with his girlfriend; Johnson often answered the phone when he called. She testified, however, that before she returned to her house, after she had stayed with a friend for awhile, she was saying that Ticey wasn't her rapist. Johnson remembered meeting with an assistant State's Attorney on December 15, 1987, but could not recall telling him that she could not be sure who raped her. However, when confronted with a letter she wrote to the assistant State's Attorney, she remembered having told him that she wanted to drop the charges, that she wasn't sure who had raped her, that one week after the event she saw her assailant in a store and that she had told her mother that she had seen the attacker.

Detective Thomas Ptak testified that he met with Johnson at the hospital on November 13, 1987, and that, "She was shaking, she was crying, she had noticeable bruises about her neck and swelling also." Johnson told him that Ticey had raped her and that she knew her brother was the rapist because

"while laying in her bed she saw him come into her room, there was a light on in the bathroom just across from the room, she saw his face, she knows his height and weight.

She also said he has a peculiar body odor about him and she identified him from all of those, his face, the height, weight and the odor of him."

On November 16, 1987, Ptak met with Johnson and an assistant State's Attorney. During that meeting, Johnson again identified Ticey as her assailant. During the interview, Johnson's mother was holding her and had her arms around her. Johnson's emotional condition was such that, "[a]fter a slight confrontation she again broke down, began crying." According to Ptak, Johnson never denied during the meeting that Ticey committed the attack.

Ticey, in defense, introduced evidence that sperm was found in Johnson's vagina following the attack. He also introduced an allegedly prior inconsistent statement by Johnson, the content of which does not appear in the record.

The trial judge found Ticey guilty "as charged in the indictment" and sentenced him to 10 years in the custody of the Illinois Department of Corrections.

■ Ticey first argues that because he was found to have committed only one act, and because criminal sexual assault is a lesser included offense of aggravated criminal sexual assault, the trial court erred in convicting him of any crimes other than one count of aggravated criminal sexual assault. The State does not contest this allega-

tion, and because we find no evidence of more than one act, we hold that one conviction for aggravated criminal sexual assault and both convictions for criminal sexual assault should be vacated; Ticey's mittimus should be modified accordingly.

Ticey next alleges that although the testimony of a single witness can sustain a conviction, such testimony cannot be the sole basis for a conviction when it was obtained before trial and when it was contradicted by that same witness' exculpatory testimony at trial. Ticey further maintains that even if that prior inconsistent statement could sustain a conviction, there must be sufficient evidence from which one could conclude that it was reliable; there was, he argues, insufficient evidence that Johnson's initial statement was reliable to justify such a conclusion.

■ Ticey cites *California v. Green* (1970), 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930, as authority for his proposition that Johnson's prior inconsistent statement identifying him as her assailant could not be used as the basis for his conviction. In *Green,* the Court held that a witness' prior inconsistent statement could be used to prove the truth of the matter asserted, but expressed its concern that "considerations of due process *** might prevent convictions where a reliable evidentiary basis is totally lacking." (399 U.S. at 163 n.15, 26 L. Ed. 2d at 500 n.15, 90 S. Ct. at 1938 n.15.) Clearly, then, *Green* does not foreclose the use of a prior inconsistent statement to support a conviction; moreover, as we discuss below, a "reliable evidentiary basis" for Ticey's conviction exists in this case.

■ When deciding whether trial evidence sufficiently supports a criminal conviction:

> " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Young* (1989), 128 Ill. 2d 1, 49, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.)

Furthermore, as Ticey concedes, "the positive testimony of even one witness, if credible, is sufficient to convict." *People v. Catlett* (1971), 48 Ill. 2d 56, 63.

■ Viewing the evidence most favorably to the State, we find that the trial judge could have reasonably concluded that Johnson, on November 13 and again on November 16, 1987, identified Ticey as her attacker and provided a basis for that identification; that some sort of emotional scene, apparently involving her mother, took place

during the November 16 meeting; and that Johnson had telephone contact with her brother while he was in jail. Although Johnson had retracted her allegations against her brother by the time she met with an assistant State's Attorney on December 15, 1987, she provided contradictory accounts at trial about whether, during the November 16 meeting, she identified Ticey as the assailant or told Detective Ptak that she "couldn't be sure" who had raped her. Finally, Johnson's explanation at trial as to why her initial identification of her brother was wrong was not explained with regard to that part of her identification which dealt with her recognition of his voice and distinctive smell.

The facts in the instant case are strikingly similar to those in *People v. Winfield* (1987), 160 Ill. App. 3d 983, in which an aggravated criminal sexual abuse conviction of one accused of molesting his six-year-old daughter was upheld against the claim that it was insufficiently proven. (160 Ill. App. 3d at 996-97.) The daughter testified at trial that she had fabricated the story about her father abusing her and that she got the idea for such a story from a friend. But the State introduced testimony which had been obtained from her during a preliminary hearing three days after the incident, in which she alleged that her father had abused her. In addition, a nurse who examined the victim the day after the alleged abuse, but who found no physical evidence thereof, testified that the girl had identified her father as the one who had abused her. Finally, the trial judge specifically found, based upon his observation of the defendant and his wife during the trial, that they had pressured the victim to recant her preliminary hearing testimony. (160 Ill. App. 3d at 986-88.) While the trial judge in the instant case made no specific finding about whether Johnson had been pressured to recant her story, that theory was specifically argued by the State, and the judge had sufficient evidence from which he could have drawn such an inference.

Ticey's use of *People v. Wise* (1990), 205 Ill. App. 3d 1097, is groundless. *Wise* dealt with the sufficiency of the evidence in a case where a robbery victim's testimony, upon which the conviction was primarily based, was impeached by evidence of his exculpatory prior inconsistent statements. The court held that the impeachment so greatly reduced the credibility of the victim's trial testimony that, without corroborating evidence, it could not be used to support the conviction. (205 Ill. App. 3d at 1101.) Johnson's prior statement was used in the instant case not only to impeach her trial testimony, as in *Wise*, but also as substantive evidence of Ticey's guilt. *Wise*, contrary to Ticey's claim, does not preclude such use of Johnson's prior state-

ment. Accordingly, we cannot say that the trial judge's verdict was erroneous. We also note that other States have allowed convictions which were predicated primarily upon a victim's prior inconsistent statement. See, *e.g., State v. Garnes* (1981), 229 Kan. 368, 624 P.2d 448; *State v. Acree* (1978), 121 Ariz. 94, 588 P.2d 836 (en banc); *State v. Maestas* (N.M. App. 1978), 92 N.M. 135, 584 P.2d 182.

In support of his claim that his trial was unfair, Ticey first notes Ptak's testimony that Johnson told him that her identification of Ticey was partly based upon her ability to see his face and on her knowledge of his weight and height. This testimony, Ticey asserts, was inadmissible hearsay, because Johnson acknowledged telling the detective only that her identification was based on his voice and the way he smelled. Ticey next avers that in her questioning of Johnson at trial, the prosecutor insinuated that Johnson had been coerced by her mother and Ticey into disavowing her earlier accusation against her brother; these insinuations, argues Ticey, were unsupported by any evidence and thus prejudiced Ticey's right to a fair trial. The allegedly improper insinuations are contained in the following portions of Johnson's testimony:

"Q. Do you remember your mother yelling at you and dragging you out of the office?

A. She didn't get in to get me, she didn't touch me.

\* \* \*

Q. Sherry, your brother called you almost every day from the jail, hasn't he?

A. He calls to talk to his girlfriend and I end up answering the phone.

Q. And he talks to you almost every day?

A. Not almost every day, I don't be home almost every day.

Q. And after this happened you stayed with a woman by the name of Helen Triplett, isn't that correct?

A. Yes.

Q. And she is a friend of yours, correct?

A. Yes.

Q. And after that you had returned to your home, is that correct?

A. Yes.

Q. And you went to stay with your mother, right?

A. Yes.

Q. And it was after you went back to your mother's home that you came and said that is wasn't your brother, isn't that correct?

A. (No response.)

Q. When you went back to your mom's house, that's when you told the police and you told the State's Attorney that it wasn't David Ticey, your brother, who did this to you, isn't that correct?

A. No, I was saying that before I left Helen's house."

Ticey failed both to object at trial to the aforementioned testimony and questions and to present them as issues in his post-trial motion. Accordingly, he has waived his right to have the issues reviewed (*People v. Fields* (1990), 135 Ill. 2d 18, 55), unless the alleged errors reasonably could have affected the verdict or unless they resulted in a failure to afford him a fair trial. 87 Ill. 2d R. 615(a); *People v. Young* (1989), 128 Ill. 2d 1, 47.

Ticey cites no authority for the proposition that the alleged errors were *per se* so prejudicial to Ticey's rights that a new trial is required. Moreover, because "[i]n a bench trial, it is presumed that the trial court has considered only competent evidence ***, and this presumption may be rebutted only when the record affirmatively shows the contrary" (*People v. Bradford* (1989), 187 Ill. App. 3d 903, 923), the lack of such a showing leads us to conclude that any impropriety had no effect on the verdict. Accordingly, we decline to review as plain error the disputed testimony and questions.

For the foregoing reasons, Ticey's convictions on one count of aggravated criminal sexual assault and on both counts of criminal sexual assault are vacated, and this cause is remanded for the purpose of so modifying his mittimus; Ticey's conviction on the remaining count of aggravated criminal sexual assault is affirmed.

Affirmed in part; vacated in part and remanded with directions.

HARTMAN and DiVITO, JJ., concur.