David TICEY, Petitioner–Appellee,

v.

Howard PETERS and Rodney Ahitow, Respondents–Appellants.

No. 92–4022.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1993.

Decided Oct. 25, 1993.

See also, 214 Ill.App.3d 1043, 158 Ill.Dec. 697, 574 N.E.2d 810.

Alison Edwards (argued), Office of the Public Defender of Cook County, Chicago, IL, for petitioner-appellee.

Thomas L. Ciecko, Deputy Atty. Gen. and Michael A. Hurst (argued), Office of the Atty. Gen., Cr. Appeals Div., Chicago, IL, for respondents-appellants.

Before BAUER, CUDAHY, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

David Ticey filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court granted Ticey's petition. We reverse.

## I.

In habeas corpus actions, we presume as true the facts found by the state court. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); 28 U.S.C. § 2254(d). We draw the facts, therefore, from the Illinois Appellate Court decision reported as *People v. Ticey,* 214 Ill.App.3d 1043, 158 Ill. Dec. 697, 574 N.E.2d 810 (1991).

Fifteen-year-old Sherry Johnson lived in Chicago with her mother, her brother David Ticey, and her infant. They were home the evening of November 12, 1987, but Ticey left at some point that night. At about 12:30 a.m., Johnson was in bed. Her bedroom was dark except for the illumination from a bathroom light that was outside her room. At approximately 12:30 a.m., a man entered her room. He choked her, stuck his fingernails in her neck, and raped her. He wore a condom.

Johnson was taken to the hospital during the early hours of November 13. An examination revealed sperm inside her vagina. She was bruised, frightened, and upset. Chicago Police Detective Thomas Ptak interviewed Johnson at the hospital. During their conversation, Johnson identified Ticey as her attacker. She told Ptak that she could see Ticey's face when he came in her room because of the light from the bathroom, and she recognized Ticey's voice. She also said she knew it was Ticey because her attacker had a peculiar odor that she recognized as Ticey's. Moreover, she told Ptak that she recognized Ticey's body height and weight. Ticey was arrested based on Johnson's statement.

Three days later on November 16, 1987, Johnson, her mother, Ptak, and an assistant state's attorney ("ASA") met to discuss the rape. Johnson again identified Ticey as her assailant. She was in a fragile emotional condition. During the course of the meeting, Johnson and her mother had a confrontation, after which Johnson broke down crying. Following the confrontation, Johnson claimed she could not be sure who attacked her. Johnson did not, however, deny that Ticey was her attacker.

Ticey remained in jail awaiting trial. Nearly every day, he telephoned his mother's home from prison to speak with his girlfriend. Johnson often answered the telephone when he called. At some point, Johnson left her mother's home and stayed with a friend. While she was living with her friend, Johnson changed her mind about identifying Ticey as her attacker. She wrote the ASA a letter asking that he drop the charges against Ticey. When Johnson met with the ASA on December 15, 1987, she told him that she was no longer sure who raped her and reiterated her desire that the ASA drop the charges against Ticey. Further, she told the ASA that a week after the attack she saw her assailant in a store and that she told her mother that she saw him. Despite Johnson's recantation of her identification of Ticey as her attacker, the ASA proceeded with Ticey's prosecution.

Ticey requested a bench trial rather than trial by jury. Ptak testified at trial to Johnson's statement at the hospital that identified Ticey as her attacker. Ptak stated that Johnson "was shaking, she was crying, she had noticeable bruises about her neck and swelling also." *Id.* He further testified that Johnson said that "while laying in her bed she saw [Ticey] come into her room, there was a light on in the bathroom just across from the room, she saw his face, she knows

his height and weight. She also said he has a peculiar body odor about him and she identified him from all of those, his face, the height, weight and the odor of him." *Id.*

Johnson also testified at trial. She stated that she could not be sure who her attacker was. She then was given the opportunity to explain her earlier identification of Ticey as her attacker. She was asked: "Sherry, when you told Detective Ptak when you met him in the hospital that it was your brother, you were sure it was your brother on that date, weren't you?" Johnson answered, "Yes, and I was calling for my brother to help me, I was calling, I was scared, I was calling for him to help me and they asked, asking me all the questions at the same time, that's what happened, he was asking me questions and he was asking me questions so I just said David, I said, my brother's name." *Id.* 214 Ill.App.3d at 1045, 158 Ill.Dec. 697, 574 N.E.2d 810.

The government argued that Johnson was pressured to change her story by her mother, Ticey, and other family members. Ticey argued that Johnson was lying about the rape because her attacker wore a condom but sperm was discovered in her vagina. He also argued that even if a rape occurred, he did not commit it. The trial judge found Ticey guilty and sentenced him to 10 years imprisonment.

Ticey appealed to the Illinois Appellate Court, arguing that the contemporaneous identification was not enough evidence to convict him in the face of Johnson's testimony. He acknowledged that one witness' testimony might be enough to convict if that testimony was credible, however, he claims that Ptak's testimony about Johnson's statement was unreliable and therefore could not be the sole basis for his conviction.

The Illinois Appellate Court held that Johnson's prior identification of Ticey, although inconsistent with her trial testimony, was sufficient to convict. The court relied on a similar Illinois case, *People v. Winfield,* 160 Ill.App.3d 983, 112 Ill.Dec. 423, 513 N.E.2d 1032 (1st Dist.1987). In *Winfield,* the Illinois Appellate Court held constitutional a statutory hearsay exception that allowed substantive use at trial of a minor's prior inconsistent statement identifying her attacker. The facts in that case were very similar to those presented here. The *Winfield* court held that the prior inconsistent statement was admissible for substantive purposes and was sufficient to uphold the defendant's conviction. *Id.* The appellate court reached the same conclusion here. It held that Johnson's prior inconsistent statement identifying Ticey was admissible as substantive evidence and was sufficient to uphold his conviction. *People v. Ticey,* 214 Ill.App.3d at 1048, 158 Ill. Dec. 697, 574 N.E.2d 810.

## II.

The district court found that Johnson's prior inconsistent statement was unreliable, and because that was the only evidence against Ticey, the court granted the petition because insufficient evidence existed to convict. We review habeas corpus decisions looking at the evidence in the light most favorable to the government. *Bae v. Peters,* 950 F.2d 469, 471 (7th Cir.1991). Because habeas corpus petitions allege constitutional violations, we review the issues *de novo. Quinn v. Neal,* 998 F.2d 526 (7th Cir.1993). When considering a due process challenge to the sufficiency of the evidence to support a conviction, we determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This inquiry focuses on the quantity and the quality of the evidence. *See United States v. Blasco,* 581 F.2d 681, 685 (7th Cir.1978) (quantity and quality of evidence sufficient to support conviction on some, but not all, counts of indictment).

Ticey argues that the quality of the evidence against him is of such a character that no reasonable trier of fact could find him guilty beyond a reasonable doubt. Ticey expands on the "quality of the evidence", citing *California v. Green,* 399 U.S. 149, 163 n. 15, 90 S.Ct. 1930, 1938 ·n. 15, 26 L.Ed.2d 489 (1970), and argues that a witness' paraphrased statement of another person's prior inconsistent statement is inadequate to serve as the sole basis for conviction and offends

due process.[1] Although Ticey seems to attack the substantive admission of the prior inconsistent identification, he instead attacks the statement as unreliable because the identification was not made under oath and because the statement was delivered by a police officer who paraphrased Johnson's statement. At oral argument, Ticey's attorney specifically stated that Ticey was not challenging the admissibility of Johnson's prior inconsistent statement, because the statement was admissible under Illinois law.

The district court accurately set forth Ticey's habeas corpus challenge to his conviction. The court stated: "Ticey's challenge is not whether Ms. Johnson's prior inconsistent statements were permissibly admitted as substantive evidence, but whether those statements were sufficient evidence upon which to base his conviction." (D.Ct. memorandum at 5–6). The district court identified the inquiry it would use: "whether these recanted statements provided sufficient evidence of guilt to comport with the guarantees of due process (i.e., on the basis of the recanted statements, could any rational finder of fact have found Ticey guilty beyond a reasonable doubt)." *Id.*

The district court cited the appropriate inquiry and the appropriate sufficiency of the evidence standard, and it went on to analyze the quality of the evidence. It considered whether the prior inconsistent statement used as substantive evidence was reliable enough to sustain a conviction, relying on *Vogel v. Percy*, 691 F.2d 843 (7th Cir.1982). *Vogel*, however, addressed the issue of whether admission of prior inconsistent statements used as substantive evidence violated due process. The district court had specifically noted that this was the argument Ticey was not making. Ticey never cited *Vogel* or any other case related to this issue except for footnote 15 in *Green*. The respon-

dents argue that the district court performed the wrong analysis and considered whether the statement should have been admitted rather than whether the statement was enough to support Ticey's conviction. They seek reversal of that decision. We believe, however, that the district court's reliance on *Vogel* was not misplaced.

The cases from which *Vogel* was drawn illustrate the due process concerns surrounding unreliable evidence. The petitioner in *Vogel* raised a due process challenge to the substantive admission at trial of a prior inconsistent statement by a witness. We applied the *Vogel* facts to a number of inquiries gleaned from a similar challenge in a Fifth Circuit case and held that the prior unsworn inconsistent statement by the witness was admissible for substantive purposes. We considered whether: 1) the declarant was available for cross-examination; 2) the statement was made shortly after the events related and was transcribed promptly; 3) the declarant knowingly and voluntarily waived the right to remain silent; 4) the declarant admitted making the statement; and 5) there was some corroboration of the statement's reliability. *Vogel*, 691 F.2d at 847 (citing *United States v. Leslie*, 542 F.2d 285 (5th Cir.1976)). All the factors focus on the reliability of the statement and the fairness of the circumstances under which the statement was made.

A look at *Leslie* illustrates that the factors were not meant to be a litmus test for the admissibility (and reliability) of a prior unsworn inconsistent statement. *Leslie* involved a direct criminal appeal. In that case, the Fifth Circuit considered whether a prior inconsistent statement by a witness at a trial was admissible for substantive purposes. The court's analysis focused on hearsay exception 803(24) of the Federal Rules of Evi-

---

**1.** Footnote 15 states in relevant part: "While we may agree that considerations of due process, wholly apart from the Confrontation Clause, might prevent convictions where a reliable evidentiary basis is totally lacking, *see Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), we do not read *Bridges* as declaring that the Constitution is necessarily violated by the admission of a witness' prior inconsistent statement for the truth of the matter asserted."

*Green*, 399 U.S. at 163–64 n. 15, 90 S.Ct. at 1937–38 n. 15. The Court's reference was to *Bridges v. Wixon*, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), which, the *Green* Court stated, was "the only case thought to suggest the existence of a possible constitutional problem in admitting a witness' prior inconsistent statements as substantive evidence." *Green*, 399 U.S. at 163–64 n. 15, 90 S.Ct. at 1937–38 n. 15.

dence.[2] Admission of a statement for substantive use under that exception is determined by whether the statement is reliable. Hence, the Fifth Circuit's analysis was on the reliability of a statement and its use as evidence to support a conviction.

In *Leslie*, the witnesses were arrested at the same time as the defendant. They made statements to the FBI implicating the defendant in the crimes for which they had been arrested. When testifying at trial, however, the witnesses gave accounts contradictory to their earlier statements. The district court allowed the statements to be admitted for impeachment purposes, but did not give the jury a limiting instruction on their substantive use. On appeal, the Fifth Circuit affirmed the district court's decision to allow the prior inconsistent statements as impeachment evidence, and held that no error occurred in the jury's consideration of the statements as substantive evidence. The Fifth Circuit observed first that the declarants were available for cross examination at trial. The court then noted that the statements were made soon after the crimes and were transcribed shortly thereafter. Because the declarants in *Leslie* were arrested for the same crime as the defendant, the court found it important that they knowingly and voluntarily waived their right to remain silent. The court then observed that the most significant factor lending to the reliability of the statements was that the declarants admitted making them. Finally, the court noted that all three of the declarants told similar stories in their out-of-court statements, and this similarity contributed to their reliability. At no time did the Fifth Circuit in *Leslie* state that these factors were the exclusive means by which reliability of out-of-court statements could be judged.

The Fifth Circuit borrowed its analytical framework from a New York district court case, *United States v. Iaconetti*, 406 F.Supp.

554, 558–60 (E.D.N.Y.1976). The Second Circuit affirmed the decision and District Judge Weinstein's analysis. *United States v. Iaconetti*, 540 F.2d 574 (2nd Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). The statements in *Iaconetti*, unlike the statements in *Vogel* and in this case, were consistent with testimony offered by the witness at trial. Judge Weinstein analyzed the reliability of one of the witnesses' out-of-court statements and determined that it was reliable and therefore admissible under Rule 803(24). Judge Weinstein determined that the statement was reliable because it was made immediately after the crime, to people to whom such information was appropriately conveyed, and was relevant to a material fact in the case. Judge Weinstein's 803(24) analysis was parlayed into the *Leslie* court's analysis of the admissibility of prior inconsistent statements.

As the jurisprudence suggests, *Vogel* offers a framework by which reliability of out-of-court statements is assessed. The district court strictly applied the *Vogel* factors and held that because Johnson's statements at the hospital were not transcribed (an element of the second *Vogel* factor), and because the substance of the statements were not independently corroborated (the fifth *Vogel* factor), Johnson's statement was not sufficiently reliable to be the sole evidence supporting a conviction. We do not believe that the district court's use of the *Vogel* admissibility factors to weigh the quality of the evidence was misplaced. Nevertheless, these factors serve only as guidelines and, under those guidelines, Johnson's prior inconsistent statement was reliable. We, too, use the *Vogel* factors as a framework to determine reliability.

The first inquiry in *Vogel* is whether the witness was available for cross examination. In this case, Johnson was available for cross-examination about her testimony to Ptak that

---

2. Rule 803(24) allows admission of some statements, although the declarant is available at trial, that would otherwise be considered hearsay. It states in relevant part:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is

offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Ticey was her attacker. She explained that she gave Ptak Ticey's name because she was confused by the questions and wanted Ticey's help. She did not, however, explain away or deny telling Ptak that Ticey's height, weight, voice, and odor were how she knew it was Ticey who attacked her. At oral argument, Ticey's attorney admitted that Johnson's explanation was "lame." Johnson acknowledged the prior statement, and it was up to the fact finder to determine whether she was telling the truth at trial or when she made the statement to Ptak. In light of her weak and incomplete explanation, and in the face of evidence of outside pressure to change her testimony, the trial court could reasonably find that Johnson's recantation at trial was not credible.

The second *Vogel* factor is when the prior inconsistent statement was made. This reflects the concern that if a significant amount of time passes between a crime and a statement, a greater opportunity exists for a witness to fabricate a story and an identification. If the statement is proximate in time to the event, less opportunity for fabrication exists.[3] In this case, Johnson made her statement at the hospital within hours of the rape. The closeness in time to the event in question minimizes the opportunity for fabrication. Johnson was still experiencing the emotional after-effects of the attack and was not yet subject to the outside pressure that the Illinois courts found influenced her trial testimony. Johnson's hospital identification statement apparently was not transcribed, yet her acknowledgment of her prior statement vitiates the need for transcription.

The third factor is whether the witness made a knowing and intelligent waiver of her right to remain silent. No such concerns are implicated here because the witness was the victim, not the suspect, of a crime.

The fourth factor is whether the declarant admits to making the prior inconsistent statement. As we discussed, Johnson admitted to giving Ptak her brother's name in response to his question asking who attacked her. Moreover, Johnson stated that Ticey

was her attacker three days later at the State's attorney's office. Her reiteration of Ticey's role in the crime lent reliability to her earlier identification and her acknowledgement of the statement provided an opportunity to question Johnson about why she twice identified Ticey as the rapist.

The final factor is whether the prior inconsistent statement was corroborated. Johnson's identification of Ticey was not corroborated by physical evidence. However, Johnson again identified Ticey as the rapist three days following the attack. Ticey acknowledged this identification at trial, and gave no explanation of why it was not accurate.

On the whole, and considered in the *Vogel* framework, we believe Johnson's prior inconsistent statement was reliable, and it is of the quality that may support a conviction. But we must now consider whether it alone is enough to support Ticey's conviction in the face of Johnson's contrary statements at trial. We believe it is.

█ We have held that evidence similar to that presented in Ticey's case is enough to sustain a conviction. *Wandick v. Chrans,* 869 F.2d 1084 (7th Cir.1989). In *Wandick,* we stated that "[w]e will not disturb the trial judge's determination that the petitioner was guilty beyond a reasonable doubt. Credible testimony of one identification witness is sufficient to support a conviction." *Id.* at 1089. In this case, the trial judge found that Ptak's testimony about Johnson's prior identification was credible. The trial judge also found that Johnson's recantation of her identification and explanation of her statement was incredible. This is in keeping with the judiciary's wary reception of recantations. *United States v. Badger,* 983 F.2d 1443, 1456 (7th Cir.1993). Ticey claims that Johnson's incredibility at trial does not, *a fortiori,* lend credibility to her prior inconsistent statement. In isolation that is true. But here, the facts surrounding the hospital identification, Johnson's reiteration that Ticey was the rapist three days later, and the facts leading up to her recantation, support the trial

---

**3.** This echoes the purpose behind hearsay exception 803(1) of the Federal Rules of Evidence. That rule allows admission of a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

court's finding that Johnson's prior inconsistent statement was more credible than her trial testimony. The trial court observed Johnson's demeanor, considered her incomplete and unsound explanation, and listened to a credible witness' (Ptak's) account of the prior statement. After weighing these considerations, the trial court could determine that given the facts, Johnson was more credible at the hospital than she was at trial.

The fact finder must resolve the problem posed by conflicting hypotheses. Here, the government offered a hypotheses that Johnson was pressured into changing her story. Ticey offered a hypotheses that if Johnson was raped, he did not commit the crime, and Johnson was confused when she said he did. The trial court judge resolved the conflicting hypotheses after observing the witnesses and hearing all the facts. The court's decision that the government hypotheses was correct was reasonable. *See United States v. Beniach*, 825 F.2d 1207, 1212 (7th Cir.1987) (federal conviction affirmed in face of defendant's innocent explanations of criminal conduct). We believe that a rational trier of fact could find Ticey guilty beyond a reasonable doubt and sufficient evidence exists to support his conviction.

### III.

The district court decision is REVERSED.

CUDAHY, Circuit Judge, dissenting.

I think the learned trial judge correctly granted the writ here. The case, of course, is extremely close, but an even-handed application of the *Vogel* factors seems to me to point toward an affirmance.

The issue in this habeas corpus action is not whether "Johnson was more credible at the hospital than she was at trial." *Ante* at 503. The issue is whether a rational trier of fact could find Ticey guilty beyond a reasonable doubt based simply on Johnson's untranscribed, uncorroborated and unsworn prior inconsistent statements. In *Vogel v. Percy*, 691 F.2d 843, 846–47 (7th Cir.1982), we adopted five guidelines for determining whether the use of a prior inconsistent statement comports with due process. As the majority correctly indicates, "[w]e considered whether: 1) the declarant was available for cross-examination; 2) the statement was made shortly after the events related and was transcribed promptly; 3) the declarant knowingly and voluntarily waived the right to remain silent; 4) the declarant admitted making the statement; and 5) there was some corroboration of the statement's reliability." *Ante* at 501–502.

We intended the application of these guidelines to "safeguard due process by 'prevent[ing] convictions where a reliable evidentiary basis is totally lacking.'" *Vogel*, 691 F.2d at 847 (quoting *California v. Green*, 399 U.S. 149, 163 n. 15, 90 S.Ct. 1930, 1938 n. 15, 26 L.Ed.2d 489 (1970)). Despite the importance of this purpose, however, the majority dilutes the corroboration prong of the guidelines. For one thing, the hypothesis of family pressure on Johnson sufficient to make her change her story is just that—a hypothesis. Evidence to support it was (in Judge Duff's words) "scanty" and in my view suggestive only. (There was some sort of "confrontation" and emotional outburst at one of Johnson's interviews and he had telephone contact with her brother while he was in jail.) Perhaps this explains why the trial judge "made no specific finding about whether Johnson had been pressured to recant her story." *People v. Ticey*, 214 Ill.App.3d 1043, 158 Ill.Dec. 697, 700, 574 N.E.2d 810, 813 (1991). More importantly, the majority has not pointed to any corroboration of Johnson's earlier identification. The majority relies for "corroboration" on another statement by Johnson. This statement may in a minor way add something to the credibility of the first one, but it essentially piles one uncorroborated (unsworn and unrecorded) statement on another. This is not "corroboration" as the word is commonly understood. *Cf. Reynolds v. Indiana*, 573 N.E.2d 430, 432 (Ind.Ct.App.1991) (listing types of independent evidence sufficient to corroborate repudiated prior statement); *People v. Winfield*, 160 Ill.App.3d 983, 112 Ill.Dec. 423, 425, 513 N.E.2d 1032, 1034 (1987) (affirming trial court's specific finding that alleged sexual abuse victim had been pressured into recanting accusation of father based on the court's observation of the father in court and on the

fact that the recanted statement was transcribed, given under oath, and similar to statements victim made to nurse treating her).

When this Court adopted the *Vogel* guidelines, we sought to determine whether a court violated due process by admitting prior inconsistent statements which were not the only basis for the conviction:

> Additional witnesses for the state positively identified petitioner Vogel as having purchased a pair of nylon pantyhose the evening of the robbery; as having been in the vicinity of the robbery under suspicious circumstances at the time the market alarm was sounded; and as having asked a friend to dispose of certain clothing approximately two hours after the robbery.

> Vogel then testified in his own behalf. He admitted the substance of the statements against him, but offered exculpatory explanations for each of his acts on the night of the robbery.

*Vogel,* 691 F.2d at 845. If anything, the guidelines should be applied *more* stringently in a case like Ticey's where the inconsistent statements are the sole foundation for the conviction. Given the absence of truly corroborative evidence supporting Johnson's initial identification, the circumstances in this case do not foreclose a reasonable doubt. I therefore respectfully dissent.