91 F.3d 147
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ronald F. WOODSON, Petitioner-Appellant,
v.
Jack R. DUCKWORTH, Respondent-Appellee.
 No. 95-3946.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 11, 1996.*
Decided July 11, 1996.
 
 Before POSNER, Chief Judge, and PELL and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Ronald Woodson brought this petition for a writ of habeas corpus pursuant to 42 U.S.C. § 2254, arguing a Brady violation and ineffective assistance of counsel on direct appeal and during his post-conviction relief efforts in Indiana. The district court found that Woodson had procedurally defaulted on the first two claims by not raising them in state court, and denied relief on the third claim. We affirm.
 
 
 2
 In habeas corpus actions, we presume as true the facts found by the state court. Ticey v. Peters, 8 F.3d 498, 499 (7th Cir.1993) ( citing Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764 (1981)). The Indiana Supreme Court determined the following facts:
 
 
 3
 The testimony reveals that on August 20, 1981, Joseph Britts and his son Harold were at work at J & J Auto Sales on Massachusetts Avenue in Indianapolis which the elder Britts owned. Two men approached Harold on the lot between 10:30 and 11:00 a.m. and inquired about a car. Harold testified that one of these men stood within four to five feet of him and the other stood within twenty feet and carried a pool cue. The men left, telling Harold they would return after borrowing some money.
 
 
 4
 Joseph Britts testified that he saw these men speak with Harold and overheard their conversation with him. He stated that he was alone on the lot at about 1:00 p.m. when the same men returned, accompanied by a third. As he leaned over his office desk to get them a key to the car, Joseph was struck on the head by one of the men. He was told not to turn around and when he did so was hit again and poked with a pool cue. One of the men removed a .38 revolver from a desk drawer and pointed it at Joseph. He was then handcuffed to a drawer. The men left with the gun and Joseph's billfold which contained $1100. Joseph told the police that two of the men who robbed him were the same men who had spoken to Harold that morning. He testified to the extent of his injuries and to the fact that his eyesight had deteriorated significantly since the attack.
 
 
 5
 On September 27, 1981, defendant's picture was placed in an array of six photographs displayed to Harold and Joseph Britts. Joseph chose defendant's photograph as one of his assailants. Harold identified defendant's picture as that of one of the two men he had seen on the lot on the morning of the robbery. On September 29, 1981, a lineup was held. Harold Britts again selected the defendant as one of the two men who had visited the lot on the morning of August 20. Joseph identified both defendant and another as the robbers. At trial, Joseph testified that he did not see his attacker in the courtroom but was also not able to identify anyone in the room. Harold testified that he could not identify anyone in the courtroom as one of the men on the lot.
 
 
 6
 Joseph Hudson testified pursuant to a plea agreement that he knew defendant and spoke with him on August 21, 1981. He stated that the defendant told him that he had robbed a used car lot on Massachusetts Avenue the previous day and taken $1300. Detective Thomas Trathen was also a witness for the State, and he testified about the pre-trial photographic and lineup identifications, as well as to the fact that the robbery of J & J Auto Sales was the only robbery of a used car lot on Massachusetts Avenue on August 20, 1981.
 
 
 7
 Defendant presented three witnesses. His sister testified about his appearance around the time of the offense. Two alibi witnesses testified that they were with the defendant from 5:30 a.m. to 2:45 p.m. on August 20, 1981 and that he was assisting them with their mail delivery service during this time. They further stated that they were with the defendant when they saw a television news report that afternoon about the robbery of J & J Auto Sales and that defendant had been with them continuously until that time.
 
 
 8
 Woodson v. Indiana, 460 N.E.2d 970, 971-72 (Ind.1984). Following a criminal trial, a jury found Woodson guilty of conspiracy to commit robbery in violation of Ind.Code §§ 35-41-5-2 and 35-42-5-1 (Burns 1979 Repl.), and of robbery in violation of Ind.Code § 35-42-5-1 (Burns 1979 Repl.). At sentencing, his conspiracy conviction was vacated and merged with the robbery conviction and he was given a forty-year prison term. On direct criminal appeal before the Indiana Supreme Court, Woodson raised two claims: that the trial court erred by failing to suppress certain identification evidence and that the evidence was insufficient to support the jury's verdict. The court found against him on both claims.
 
 
 9
 At some point after his direct appeal, Woodson learned that another inmate, Kevin Flemmonds, had confessed to police to have perpetrated the J & J robbery with two other men: James Watkins and Henry M. (Flemmonds did not remember Henry's last name). Woodson then brought a motion for post-conviction relief in Indiana state court alleging newly discovered evidence. An evidentiary hearing was held in which Woodson was represented by private counsel. The post-conviction hearing judge denied relief because due diligence was not used to discover the evidence in time for trial, the evidence was not worthy of credit, and the evidence would not produce a different verdict. This decision was affirmed on appeal.
 
 
 10
 Woodson then brought this petition alleging for the first time that his counsel on direct appeal was ineffective and that the state failed to disclose Flemmonds' confession in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963) (government must give exculpatory evidence to defense). Because these claims were not raised in Indiana state court, they are procedurally barred unless Woodson can show "both good cause for his failure to raise the issue[s] on direct appeal and actual prejudice from the newly-asserted errors." Bond v. United States, 1 F.3d 631, 634 (7th Cir.1993); Daniels v. United States, 54 F.3d 290, 292 (7th Cir.1995).[1] To demonstrate good cause, Woodson alleges that his attorney during his post-conviction proceeding was constitutionally deficient. This argument fails, though, because there is no constitutional right to counsel on collateral attacks. Coleman v. Thompson, 501 U.S. 722, 757, 111 S.Ct. 2546, 2568-69, 115 L.Ed.2d 640 (1991) ("Because [the petitioner] had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of [his] claims in state court cannot constitute cause to excuse the default in federal habeas."); Cawley v. De Tella, 71 F.3d 691, 695 (7th Cir.1995). Woodson makes no other allegations of cause, therefore his claims are procedurally barred.
 
 
 11
 Woodson has one claim which is not procedurally barred: that his counsel during his post-conviction hearing was ineffective. However, this claim fails because there is no right to counsel in collateral attacks. Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993 (1987).
 
 
 12
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 On April 24, 1996, while this case was pending on appeal, the President signed into law the "Antiterrorism and Effective Death Penalty Act of 1996." Pub.L. No. 104-132, 110 Stat. 1214. Title I of this Act significantly curtails the scope of federal habeas corpus review. We need not decide in this case to what extent these amendments apply to habeas petitions pending when the Act was signed into law because, even under the more expansive scope of review permitted prior to the Act, the Appellant in this case would not have been entitled to federal habeas corpus relief