**Frank O. CASTANEDA,**
**Petitioner–Appellant,**

v.

**Gary L. HENMAN,**
**Respondent–Appellee.**

No. 89–1353.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1989.
Decided Oct. 1, 1990.

Michael Dwyer, Office of the Federal Public Defender, St. Louis, Mo., for petitioner-appellant.

Stephen B. Clark, Asst. U.S. Atty., East St. Louis, Ill., Laura J. Jones, Asst. U.S. Atty., Benton, Ill., for respondent-appellee.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and WILL, Senior District Judge.[1]

BAUER, Chief Judge.

Frank O. Castaneda, an inmate at the United States Penitentiary ("USP") in Marion, Illinois, appeals from the district court's grant of summary judgment in favor of Gary Henman, the warden of Marion. We affirm.

## I.

In 1986, Castaneda filed a petition for habeas corpus, contending that his "inmate profile"[2] contained four falsehoods which resulted in his 1982 transfer from the USP at Lompoc, California, to the USP at Marion. His inmate profile included the following four statements: (1) Castaneda associated heavily with members of the "Mexican Mafia" while incarcerated at Lompoc; (2) he was involved in homosexual activity at Lompoc, including pressuring other inmates for sex; (3) he threatened to kill a unit manager at Lompoc; and (4) he was a known killer. In his petition, Castaneda contended that these alleged falsehoods

were the reason why he was denied parole in 1985.

The magistrate originally recommended that the district court grant summary judgment to the government on the basis that Castaneda's petition was unsuitable for habeas corpus review because it did not challenge the legality or length of his imprisonment.[3] The district court, however, found that the petition was properly brought under *Del Raine v. Carlson*, 826 F.2d 698 (7th Cir.1987). The magistrate thereafter recommended that the government's supplementary motion for summary judgment be granted, finding that the Parole Commission's 1985 decision to continue Castaneda's sentence to expiration did not rely on the allegedly false information in his profile. The magistrate also found that Castaneda's allegation that he was transferred to Marion because of the allegedly false information failed to raise a constitutional claim. Castaneda then filed a supplemental brief alleging that he had a liberty interest, created by section 552a(e) of the Privacy Act, 5 U.S.C. § 552a(e), in ensuring that the Bureau of Prisons maintain accurate records. The magistrate rejected this claim, finding that § 552a(e) does not create a liberty interest in the maintenance of accurate files so as to trigger the procedural protections of the due process clause. The district court adopted the magistrate's report and recommendation on all three issues and granted the government's motion for summary judgment. Castaneda then filed a timely notice of appeal.

## II.

Castaneda claims that the district court erred in finding that his transfer to Marion failed to raise a constitutional claim. He maintains that he was transferred from Lompoc to Marion for disciplinary reasons

---

**1.** The Honorable Hubert L. Will, Senior Judge for the United States District Court for the Northern District of Illinois, is sitting by designation.

**2.** An "inmate profile" is the capsulized version of the inmate's central file, which contains all pertinent historical information about the inmate.

**3.** The magistrate found that the Parole Commission did not rely on Castaneda's inmate profile in denying him parole. Therefore, the allegedly false information did not affect the length of Castaneda's imprisonment.

and contends that, under *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), a prisoner cannot be disciplined without first receiving a due process hearing. Castaneda, however, has misread the import of *Wolff*. Furthermore, he has failed to demonstrate that he has a protected liberty interest in remaining at Lompoc, thereby entitling him to a hearing before or after his transfer to Marion. We therefore affirm the district court's grant of summary judgment on this issue.

■ We first address Castaneda's contention that *Wolff* stands for the proposition that a prisoner cannot be disciplined without first receiving a due process hearing. In *Wolff*, an inmate of the Nebraska state prison system brought suit under 42 U.S.C. § 1983 charging that the prison's disciplinary proceedings, the outcome of which could result in the loss of good-time credits, did not comply with the due process clause. The Supreme Court found that the prisoners had a protected liberty interest in the accumulated good-time credits because Nebraska state law provided that an inmate could lose good-time credits only if guilty of serious misconduct, thus circumscribing the government's discretion to reduce credits. *Wolff*, 418 U.S. at 557, 94 S.Ct. at 2975. The Court thus required some kind of hearing consonant with the institutional environment to insure that inmates lost good-time credits only in cases of serious misconduct.

Contrary to Castaneda's assertion, the due process rights mandated by *Wolff* turn not upon the mere fact of discipline, but upon whether the disciplinary sanction imposed by prison officials implicates an inmate's liberty interest. *Wolff*, 418 U.S. at 557, 94 S.Ct. at 2975. Thus, the relevant question to this appeal is not whether Castaneda was in fact disciplined but whether the disciplinary sanction which he received implicated a protected liberty interest.

■ Castaneda claims that he possesses a liberty interest in remaining at Lompoc. A liberty interest may arise from the due process clause itself, *see, e.g., Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); or it may be created by statute or binding administrative regulation. *See, e.g., Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Wolff*, 418 U.S. 539, 94 S.Ct. 2963. For a liberty interest to be created by statute or regulation, the statute or regulation must use "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed [and that certain action will not be taken by government officials] absent specified substantive predicates." *Hewitt*, 459 U.S. at 471–72, 103 S.Ct. at 871. By using such language, the statute places "substantive limits on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). More recently, the Supreme Court has stated that a statute or regulation creates a liberty interest "by establishing 'substantive predicates' to govern official decisionmaking, ... and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989).

It is well-settled that an inmate does not possess a constitutional liberty interest in remaining at a particular institution:

> The conviction [of a criminal defendant] has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.... [T]he Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner transferred to the institution with the more severe rules.

*Meachum v. Fano*, 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).

*See also Bruscino v. Carlson,* 854 F.2d 162, 168 (7th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 3193, 105 L.Ed.2d 701 (1989). Furthermore, the reasons an inmate may be forced to leave a particular institution are irrelevant to the Due Process analysis. *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976) (The "[Due Process] Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as *disciplinary or punitive."*) (emphasis added).

Castaneda recognizes that he has no liberty interest arising from the constitution in remaining at Lompoc. He also acknowledges that federal law grants the Attorney General absolute discretion over the placement and transfer of inmates:

> The Attorney General may designate as a place of confinement any available, suitable, appropriate institution or facility, whether maintained by the Federal Government or otherwise, and whether within or without the judicial district in which the person was convicted, and *may at any time transfer a person from one place of confinement to another.*

18 U.S.C. § 4082(b) (emphasis added). Castaneda claims, however, that 28 C.F.R. § 541.13 sufficiently circumscribes the discretion committed to the Attorney General by § 4082(b) so that an inmate has a "justifiable expectation" that he will not be transferred for disciplinary reasons prior to a hearing. *See Olim,* 461 U.S. at 245, 103 S.Ct. at 1745. In relevant part, § 541.13 provides:

> The [Disciplinary Hearing Officer ("DHO")] may recommend that an inmate be transferred to another institution for disciplinary reasons. Where a present or impending emergency requires immediate action, the Warden may recommend for approval of the Regional Director the transfer of an inmate prior to either a UDC or DHO hearing. Transfers for disciplinary reasons prior to a hearing before the UDC or DHO may be used only in emergency situa-

tions and only with approval of the Regional Director. . . .

28 C.F.R. § 541.13 (Table 4—Sanctions).

We disagree with Castaneda's contention that § 541.13 places substantive limits upon the Attorney General's discretion to transfer inmates from one institution to another when the transfer is for disciplinary reasons. The regulation sets forth no criteria by which to distinguish between the instances in which an inmate is transferred for disciplinary reasons—a situation which Castaneda contends requires a hearing—and the instances in which an inmate is transferred for administrative, including security, reasons—a situation which requires no hearing and one in which the Attorney General admittedly enjoys unfettered discretion under 18 U.S.C. § 4082(b). Often, there will be multiple reasons for ordering an inmate transfer. For example, an inmate who is transferred in the wake of a riot or the aftermath of an escape attempt may be transferred for both disciplinary and security reasons. Absent a set of criteria which delineates the circumstances amounting to a disciplinary—as opposed to a security or administrative—transfer, the right to a hearing would depend upon which motivation for transfer is dominant; a fruitless and impossible inquiry. Because no substantive criteria exist to circumscribe the warden's discretion to designate a transfer as one done for security rather than disciplinary reasons, a hearing is not constitutionally required.

### III.

█ Along with his claims invoking *Wolff* and 28 C.F.R. § 541.13, Castaneda also claims that section 552a(e)(5) of the Privacy Act, 5 U.S.C. § 552a *et seq.,* creates a liberty interest in accurate record keeping and that the Bureau of Prisons ("BOP") violated his due process rights by failing to afford him the opportunity to challenge the accuracy of the BOP's records which pertain to him. Castaneda would like this court to compel the BOP to furnish him with a "meaningful statement"

setting forth facts in support of its allegations.[4]

Section 552a(e)(5) provides that each agency that maintains a system of records shall "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." Because of the qualifying language of § 552a(e)(5), the district court found that the section only sets a goal of accurate record-keeping. Castaneda, on the other hand, contends that the language of the statute is mandatory, thereby creating a legitimate expectation that the information contained in his inmate profile *will be* and *must be* accurate. Because we find that Castaneda received all the process he was due, we affirm the district court without deciding whether § 552a(e)(5) creates a protected liberty interest. *See Dickson v. Office of Personnel Management*, 828 F.2d 32 (D.C.Cir.1987) (citations omitted).

■ Due process is a flexible concept, the import of which is to provide a meaningful opportunity to be heard. *Id.* at 41. Although the goal is always the same, the means of providing such a meaningful opportunity vary with the particular circumstances of each situation. *See, e.g., Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Due process analysis must weigh "the risk of an erroneous deprivation of [a private interest] through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Our analysis begins with the observation that Castaneda may challenge the accuracy of the information contained in his inmate profile through an administrative remedy procedure already in place. *See* 28 C.F.R. § 16.97(c) and 28 C.F.R. §§ 542.13, 542.15. Castaneda, in fact, employed this procedure, appealing the denial of his request for relief all the way to the BOP's Office of General Counsel and Review (the "OGC").[5] Thus, Castaneda has been given the opportunity to be heard. The record does not reflect whether Castaneda was permitted to attach his version of the incidents reported in the inmate profile; however, this avenue is available to him. *See Fendler v. United States Bureau of Prisons*, 846 F.2d 550, 554 (9th Cir.1988). Furthermore, Castaneda's complaint about the information contained in his inmate profile arises out of his concern that such information could affect his future parole eligibility. Castaneda, however, will have the opportunity to rebut any information the Parole Commission uses in its decision-making process. *See* 28 C.F.R. § 2.19(c).[6] Thus, Castaneda

---

4. Castaneda also originally contended that an oral hearing on the BOP's records was necessary to ensure due process. It is unclear whether he still seeks this remedy or whether he just wants a detailed statement. Regardless, Castaneda is not entitled to an oral hearing for the same reasons that the BOP need not provide him with the detailed statement.

5. The OGC found that there was a factual basis for each of the allegations contained in Castaneda's inmate profile, stating:
    You question the accuracy of three statements contained in your inmate profile summary. Those statements are in regard to the threat you made towards your unit manager at Lompoc, the statement that you were involved in sex pressure activities at Lompoc, and that you are a known killer. The statement regarding the threat to kill your unit manager is based upon a statement you made to a staff member at Lompoc.... As for the allegations of your involvement in sex pressure activities, you are a confirmed member of the Mexican Mafia prison gang, whose known activities include ... pressuring of inmates for services, such as homosexual acts.... As for the statement that you are a known killer, you killed another inmate at McNeil Island during a prior period of incarceration and in September 1975 you were involved in the killing of an inmate at Marion. We find no basis to support your claim that your inmate profile *contains inaccurate information*. Your appeal is denied.

6. Castaneda's other claim on appeal is that the allegedly inaccurate information already impacted his opportunity for parole. The Parole Commission's "Notice of Action," dated December 23, 1985, specifically states that, with regard to institutional misconduct, the Commission

has had the opportunity to voice his concerns and would benefit little from the requested procedure.

Furthermore, there are sound administrative reasons for rejecting Castaneda's request. The procedure that Castaneda seeks will impede government recordkeeping and interfere with law enforcement activities. Castaneda seeks a statement containing the following information: (1) the name of the person or persons accusing him of the alleged misconduct; (2) the date and time of the alleged misconduct; and (3) the place where the alleged misconduct occurred. He contends that this request would not impose any additional burdens upon the prison system because such a remedy is already contemplated by the Privacy Act. *See* 5 U.S.C. § 552a(d)(4).[7] The BOP, however, has exempted itself from the strictures of § 552a(d) because:

> [E]xemption ... is essential to protect internal processes by which [BOP] personnel are able to formulate decisions and policies with regard to federal prisoners, to prevent disclosure of information to federal inmates that would jeopardize legitimate correctional interests of security, custody, or rehabilitation, and to permit receipt of relevant information from other federal agencies, state and local law enforcement agencies, and federal and state probation and judicial offices.

28 C.F.R. § 16.97. These reasons apply with equal force to the argument against requiring such procedures under a due process analysis.

Castaneda had the opportunity to challenge the alleged inaccuracies in his inmate profile and, should that information become relevant to future parole decisions, he will

have the opportunity to challenge it again. Furthermore, he may append his version and/or his refutation of the information alleged to the inmate profile. Because we find that Castaneda received all the process he was due, we affirm the district court's grant of summary judgment on this issue as well.

## IV.

Although Castaneda may have preferred the conditions at Lompoc to those at Marion, he has no protected liberty interest in remaining at a particular institution. Nor was Castaneda denied due process in his efforts to challenge the accuracy of the information contained in his inmate profile. Therefore, the district court's grant of summary judgment is

AFFIRMED.

WILL, Senior District Judge, concurring.

I concur with the majority's disposition of the case but write separately to emphasize that the warden's discretion to transfer prisoners from one institution to another is not unlimited, as the majority's opinion seems to suggest.

The majority concludes that section 541.-13 places no "substantive limits upon the Attorney General's discretion to transfer inmates from one institution to another when the transfer is for disciplinary reasons" and that "[b]ecause no substantive criteria exist to circumscribe the warden's discretion to designate a transfer as one done for security rather than disciplinary reasons, a hearing is not constitutionally required." Majority opinion, *supra* p. 984. Section 541.13(a), however, states that

---

only relied on Castaneda's conduct which occurred after his transfer to USP–Marion. The incidents the accuracy of which Castaneda contests, however, occurred *prior* to his transfer to Marion. Therefore, the district court correctly found that the allegedly erroneous information did not affect Castaneda's parole eligibility.

7. Section 552a(d)(4) provides that an agency shall,
    in any disclosure, containing information about which the individual has filed a state-

ment of disagreement, occurring after the filing of the statement under paragraph (3) of this subsection, clearly note any portion of the record which is disputed and provide copies of the statement and, if the agency deems it appropriate, copies of the concise statement of the reasons of the agency for not making the amendments requested to persons or other agencies to whom the dispute record has been disclosed.

"[i]mposition of a sanction requires that the inmate first is found to have committed a prohibited act," and that language constitutes a substantive limit on the warden's discretion. Unless there has been a finding that a prohibited act has been committed, the sanction of a "disciplinary" transfer may not be imposed. To conclude, as the majority does, that because the regulations do not contain an explicit, specific definition for the word "disciplinary," "no substantive criteria exist to circumscribe the warden's discretion" in recommending disciplinary transfers, renders section 541.-13(a) meaningless.

As the majority's opinion points out, in many cases prisoners are transferred for a mixture of disciplinary and security reasons. Nevertheless, to the extent that the transfer is solely or even primarily for disciplinary reasons, section 541.13(a) limits the warden's discretion sufficiently to create a due process right to a hearing.

It is clear from the record, however, that in this instance Castaneda was transferred primarily, if not entirely, for security reasons. On that basis, I agree, therefore, with the majority that in the case of this nondisciplinary transfer Castaneda was not deprived of liberty without due process of law and did not have a right to a hearing.