Lorenzo L. STONE–BEY, Plaintiff,

v.

Karl SWIHART, Investigator, John Barnes, C.A.B. Chairman, Defendants.

No. 2:93cv198AS.

United States District Court, N.D. Indiana, South Bend Division.

Sept. 22, 1995.

Lorenzo L. Stone–Bey, Michigan City, IN, pro se.

Charles E. Doyle, Beverly Shores, IN, for Lorenzo L. Stone–Bey.

Diane Marger Moore, Office of Indiana Attorney General, Indianapolis, IN, for H. Christian DeBruyn, Robert Farley.

Diane Marger Moore, Office of Indiana Attorney General, David A. Arthur, Indiana Attorney General, Indianapolis, IN, for Karl Swihart.

David A. Arthur, Indiana Attorney General, Indianapolis, IN, for John Barnes.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I. INTRODUCTION

On July 27, 1993 inmate Lorenzo L. Stone–Bey, imprisoned for life for murder, (hereinafter "Stone–Bey") filed a complaint under 42 U.S.C. § 1983 alleging that various members of the Indiana State Prison violated his rights in regards to a Conduct Adjustment Board (hereinafter "CAB") hearing. On November 11, 1993 this court dismissed portions of the complaint leaving only Karl Swihart (hereinafter "Swihart") and John Barnes (hereinafter "Barnes") as defendants in their individual capacities in this case. Dispositive motions pending in this court are Stone–Bey's March 8, 1995 Motion for Summary Judgment and Defendants' May 1, 1995, response thereto. Defendants also have pending an October 12, 1993 Motion for Summary Judgment and a May 1, 1995 Supplemental Motion for Summary Judgment. Swihart and Barnes are represented by members of the Indiana Attorney General's Office and Stone–Bey is represented by attorney Charles E. Doyle[1].

---

1. Having to leaf through many unintelligible *pro se* petitions each year, this court greatly appreciates the services of Mr. Doyle.

## II. FACTS

Someone informed prison officials that on April 20, 1993 Stone–Bey had allegedly threatened to have inmate Bowens "eliminated" if Bowens failed to pay Stone–Bey an outstanding debt. Pending an investigation into the matter, Stone–Bey was placed in segregation. Stone–Bey denied knowing Bowens or having any knowledge of such a threat. Stone–Bey offered to take a lie detector test, but his offer was rejected. On May 5, 1993 investigator Swihart prepared a Report of Investigation of Incident which stated:

Investigation has determined that several weeks ago offender Bowens purchased $75.00 worth of marijuana from offender Stone. Offender Bowens failed to pay offender Stone as they had previously arranged. On April 20, 1993 at approximately 7:30 p.m. while at recreation offender Stone approached Bowens and demanded his money. At that time Stone told Bowens in the presence of witnesses, that if he did not pay him that Stone would have Bowens eliminated.

*Defendants' Motion for Summary Judgement,* Appendix 1, p. 1. Swihart also prepared a Conduct Report which stated: "Investigation has determined that on the above date and time offender Stone did threaten offender Bowens # 875526 at recreation in the presence of witnesses. This threat was made because Bowens owed Stone a $75.00 drug debt." *Defendants' Motion for Summary Judgement,* Appendix 2, p. 1.

On May 11, 1993 Stone–Bey received a copy of the Conduct Report and a Notice of Disciplinary Hearing charging Stone–Bey with threatening. The disciplinary hearing No. ISP93–05–0038, with Officer Barnes presiding began on May 12, 1993. Appearing with Stone–Bey was lay advocate Burnett. The evidence before the CAB included Stone–Bey's testimony, the Conduct and Investigative Reports, and written statements by inmates Keeby, Ridley, and McKinney. It was discovered at the hearing that Swihart had not signed the Conduct or Investigative Reports. Barnes was informed at the hearing that Bowens recanted his story and was now denying that Stone–Bey had threatened

him. Stone–Bey by his lay advocate requested a dismissal of the case citing the unsigned reports and Bowens' recantation. Barnes denied the request. Instead he continued the hearing until May 19, 1993 so that more investigating could be done. In the interlude between the two hearings, Swihart inspected the Conduct Report and the Investigative Report and verified in a May 17, 1993 letter to Barnes that the reports were prepared by him. *Defendants' Motion for Summary Judgement,* Appendix 2, p. 1. There is no dispute that the letter was before Barnes when the hearing resumed.

Upon resumption of the hearing on May 19, Stone–Bey's renewed motion to dismiss was denied. Barnes found Stone–Bey guilty of threatening and sentenced him to one year of disciplinary segregation. Barnes concluded: "The conduct report, offender/lay advocate statement, investigative file, ISP93–061, witness statement have been reviewed for evidence. The preponderance of evidence indicates that the offender did threaten [sic] Bowen per information from investigative report ISP93–061." *Id.* Later, in an affidavit taken on April 6th, 1995, Barnes indicated that his finding of guilt "was based in part on the facts that Bowens passes a Voice Stress Analysis and that there is in the investigative file a statement that is signed by another offender who witnessed the threat being made." *Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment,* Affidavit of John Barnes. Barnes also stated in his affidavit that he did not believe Bowens' recantation because of the voice stress analysis results and the signed statement from another offender who witnessed the threat being made. *Id.* No voice stress analysis results or signed witness statements have been submitted to this court.

On May 26, 1993 Stone–Bey appealed Barnes' decision to Robert Farley, Superintendent of the prison. Superintendent Farley denied the appeal on July 1, 1993. Stone–Bey appealed to the Disciplinary Review Manager who denied the appeal on July 9, 1993. Stone–Bey then turned to the federal courts.

## III. ISSUES

On July 27, 1993 Stone–Bey filed the present petition under 42 U.S.C. § 1983 seeking damages against the defendants for various deprivations of his Fourteenth Amendment Due Process rights. On November 23, 1993, after carefully reviewing Defendant's October 12, 1993 Motion for Summary Judgment, this court ordered that Defendants DeBruyn, Farley, and Monroe be dismissed. This court also ordered any and all damage claims against Swihart and Barnes their official capacities dismissed. Finally, this court ordered Stone–Bey to indicate whether he was challenging disciplinary segregation or administrative segregation.

Stone–Bey filed a brief on December 16, 1993 in response to this court's November 23, 1993 order, but since that time Stone–Bey has become represented by counsel. Therefore, this court finds the December 16, 1993 Motion for Summary Judgment superseded by Mr. Doyle's March 8, 1995 Motion for Summary Judgment. This court also examines the Defendant's October 12, 1993 and May 1, 1995 motions. Synthesizing the allegations in the above mentioned motion, this court finds that Stone–Bey raises the following violations of due process. Specifically, Stone–Bey alleges that his rights were violated:

by Swihart because he:

 a.) failed to sign the investigative reports;

 b.) failed to obtain approval of the report by the shift supervisor; and,

 c.) failed to properly document the written statements of Plaintiff's witnesses,

and

by Barnes because he:

 a.) failed to dismiss the claim on the basis of inadequate notice of the threat made;

 b.) failed to provide Stone–Bey with copies of statements given by the witnesses who spoke on his behalf;

 c.) failed to dismiss the claim on the basis of Swihart's omissions;

 d.) failed to maintain a written record of the hearing; and

 e.) failed to dismiss the claim on the basis of Bowens' recantation.

## IV. DISCUSSION

To maintain order and promote safety, prisons promulgate various rules that regulate inmate conduct. Stone–Bey was accused and found guilty of violating the Indiana State Prison's rule prohibiting inmates from threatening other inmates. *Adult Disciplinary Policy Procedure Manual*, p. 38, # 213. As punishment, Stone–Bey was removed from the general prison population and placed in segregation. Stone–Bey's appeal of the CAB decision through the appropriate administrative appeals brought him no relief and Indiana refuses to hear his petition claiming that "there is presently no constitutionally protected right to judicial review of the decisions of factfinding and appellate tribunals presently conducting disciplinary proceedings within the prison system." *Riner v. Raines*, (1980) 274 Ind. 113, 409 N.E.2d 575.[2]

 However, federal courts do not sit as surrogates to state courts. In reviewing a prison disciplinary hearing, a federal court looks only for violations of the United States Constitution. Federal courts do not sit to pass judgment upon violations of state law or state procedure. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Pennhurst v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). To receive federal review, a state prisoner challenging his disciplinary hearing must allege that the CAB deprived him of a right guaranteed or protected by the United States Constitution. Here, Stone–Bey alleges that Barnes and Swihart deprived him of his due process rights under the Fourteenth Amendment. "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Stone–Bey argues that he is entitled

---

**2.** *See also, Superintendent v. Hill*, 472 U.S. 445, 450, 105 S.Ct. 2768, 2771, 86 L.Ed.2d 356 (1985) (observing that although prison inmates may be entitled to certain due process in disciplinary proceedings, the Supreme Court has never held that the Due Process Clause creates a right to judicial review of prison disciplinary proceedings.)

to damages under 42 U.S.C. § 1983 because the CAB hearing failed to provide him with sufficient process before he was deprived of his liberty interest in remaining in the general prison population.[3] Stone–Bey presupposes that he has a liberty interest in remaining out of segregation.

## A. LIBERTY INTEREST (Part I)

■ Although a prisoner may not be deprived of a liberty interest without due process, *sanctions that do not deprive an inmate of a liberty interest are not subject to federal review. Castaneda v. Henman,* 914 F.2d 981, 983 (7th Cir.1990), *cert. denied* 498 U.S. 1124, 111 S.Ct. 1085, 112 L.Ed.2d 1190 (1991); *Gaston v. Taylor,* 946 F.2d 340 (4th Cir.1991) (*en banc*) (no liberty interest where received suspended sentence of isolation which did not bring about change in length or conditions of original sentence). Thus, if Stone–Bey has no liberty interest in remaining in the general prison population, then he is not entitled to due process prior to being segregated from the general prison population.

■ To discover if an inmate has a liberty interest or a constitutional "right" in an element of prison life, a court looks either to the Due Process Clause itself or to state statutes and regulations. *Sandin v. Conner,* — U.S. —, —, 115 S.Ct. 2293, 2297, 132 L.Ed.2d 418 (1995); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Some liberty interests, such as the right to remain free from cruel and unusual punishment, the right to stay out of a mental hospital, or the right to refuse involuntary administration of psychotropic drugs, flow directly from the Constitution itself. *Sandin,* — U.S. at —, 115 S.Ct. at 2300. Other liberty interests do not come from the United States Constitution; they are created by state statutes or regulations.

In *Wolff,* the Court held that Nebraska's statutes created a liberty interest in good time credits. Nebraska authorized good time credits and permitted an inmate to be deprived of the credits only for "major misconduct". The Court held that the statutory language created an interest of "real substance". The Court held that the statutory language created an interest of "real substance" which was "sufficiently embraced within Fourteenth Amendment Liberty to entitle [a state prisoner] to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Id.,* at 557, 94 S.Ct. at 2975.

Later cases expanded upon the concept of state created liberty interests but began to do so by looking not at the substance of the interest involved, but instead at the nature of the language that created the interest. Courts began to focus on the whether the language was mandatory or discretionary. In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), an inmate challenged his assignment to disciplinary segregation.[4] The *Hewitt* court found the due process clause itself did not create a liberty interest in remaining in the general prison population since nonpunitive segregation is the sort of confinement that inmates should reasonably anticipate at some point in their incarceration. Yet, the Court found the state created a liberty interest in remaining in the general prison population since it had gone beyond issuing mere procedural guidelines and had used "language of an unmistakably mandatory character, requiring that certain procedures 'shall', 'will' or 'must' be employed," *Id.,* at 471, 103 S.Ct. at 871, prior or

---

3. The text of 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4. The terms administrative segregation, disciplinary segregation, and solitary confinement are relatively interchangeable. Courts tend to point to the purpose of the segregation to differentiate between administrative and disciplinary or punitive segregation. If however, the conditions in either type of segregation are relatively similar (as they appear to be in many cases) then such discernment seems to be of little practical use.

subsequent to confining an inmate in segregation. *Id.*, at 471–72, 103 S.Ct. at 871.[5]

The Court later clarified *Hewitt* by stating that a state created liberty interest comes not from procedural laws, but from laws "establishing 'substantive predicates' to govern official decision making, and further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989) (citations omitted).

The court recently reiterated that the substantive nature of the alleged interest is of foremost importance. *Sandin v. Conner,* — U.S. — —, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). *Sandin* criticizes *Hewitt* and the cases that follow it for shifting the focus of the liberty interest from the nature of the deprivation to one based on the language of a particular regulation. *Sandin,* — U.S. at — —, 115 S.Ct. at 2299. Following *Hewitt,* courts began to draw negative inferences from mandatory language in the text of prison regulations. *Id.* Thus, "if A then B" also became "if not A, then not B." Such reasoning produced at least two undesirable effects. "First, it create[d] disincentives for States to codify prison management procedures in the interest of uniform treatment. . . . Second, the *Hewitt* approach [ ] led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id.* While admitting that States may create liberty interests that are protected by the Due Process Clause, the *Sandin* court cautioned that *"[liberty] interests will be generally limited to freedom from restraint [that] imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.* at — —, 115 S.Ct. at 2300 (emphasis added).

## B. *HECK V. HUMPHREY*

█ Even if Stone–Bey has a liberty interest in remaining in the general prison popu-

lation, the Defendant's argue that this court need not inquire further because Stone–Bey has not met the requirements of *Heck v. Humphrey,* — U.S. — —, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Court addressed the question of whether a state prisoner may challenge the constitutionality of his criminal conviction in a suit for damages under 42 U.S.C. § 1983. Heck, an Indiana inmate, brought a § 1983 lawsuit seeking damages, but not injunctive relief or release from custody—on the claim that the defendants, acting under color of state law, had engaged in unlawful acts that lead to his arrest and conviction. *Id.* at — —, 114 S.Ct. at 2368. Believing that the legislative history of § 1983 precluded inmates from using § 1983 to challenge the validity of outstanding criminal judgments, the *Heck* court held that if the remedy sought under § 1983 would require a finding or judgment that would render a conviction or sentence invalid, then the § 1983 plaintiff must first "prove that the conviction was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at — —, 114 S.Ct. at 2372.

Whether *Heck* applies to prison disciplinary proceedings is unclear. *Heck* was decided on the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding *criminal* judgments." *Id.* at — —, 114 S.Ct. at 2372. (emphasis added). *Heck* concluded that if a district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding *criminal* judgment, the action should be allowed to proceed. *Id.* The Defendant's position is certainly appealing and this court admits that it is constraining *Heck* narrowly; yet, it is not clear that the present law in the Seventh Circuit applies *Heck* to prison disciplinary hearings. Several courts have hinted in un-

---

5. Following the language of *Hewitt,* Chief Judge Posner, in *Smith v. Shettle,* 946 F.2d 1250 (7th Cir.1991) discussed but did not decide whether Indiana created a liberty interest in remaining in the general population. Instead, Chief Judge Posner found that the process the inmate received, notice and an opportunity to be heard, was sufficient in that case to withstand Constitutional scrutiny.

published opinions that *Heck* may apply to prison disciplinary hearings, but no published opinions have mandated such a procedure.[6] Simply put, at this point, this court does not equate a prison disciplinary proceeding to a "criminal judgment".[7] Perhaps at the very least, there must be some evidence of a relationship between an inmate's criminal conviction and the disciplinary proceedings. Here, there is no evidence that a judgment in the present lawsuit will affect Stone–Bey's underlying criminal conviction in any manner. Therefore, *Heck* does not apply and this court may proceed to the merits.

## C. THE PROCESS DUE

■ Assuming without deciding that Stone–Bey was deprived of a liberty interest, the process due in a prison disciplinary setting is limited. The following words should sound familiar to Stone–Bey.

The requirements imposed by the Due Process Clause are "flexible and variable dependent upon the particular situation being examined." *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, [871,] 74 L.Ed.2d 675 (1983). We "cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison." *Wolff v. McDonnell*, 418 U.S. 539, 560, [94 S.Ct. 2963, 2976, 41 L.Ed.2d 935], (1974). Nonetheless, "a prisoner is not wholly stripped of constitutional protection when he is imprisoned for a crime. There is no iron curtain drawn between the Constitution and the prisons of this country." Id. at 555–56 [, 94 S.Ct. at 2974]. Accordingly, in considering the command of the Due Process Clause in light of the peculiar exigencies of the prison setting, the Supreme Court has held that an inmate, while not entitled to the full panoply of due process rights accorded to free citizens, is entitled

to fundamental protection from the arbitrary action of government. *Wolff*, 418 U.S. at 556–58 [, 94 S.Ct. at 2974–75]; *Hewitt*, 459 U.S. at 472 [, 103 S.Ct. at 871].

*Rasheed–Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir.1992) (Stone–Bey apparently also calls himself Rasheed–Bey).

■ In *Wolff, supra*, at 563–71, 94 S.Ct. at 2978–82, the Court set down the minimum procedures required by due process. An inmate facing disciplinary proceedings should receive: 1.) advance written notice of the claimed violation, 2.) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken, 3.) the opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, 4.) aid of a fellow inmate, or adequate substitute where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, 5.) an impartial factfinder. *Id.* at 563–571, 94 S.Ct. at 2978–82. Cross-examination is left to the sound discretion of state prison officials. *Id.* at 569, 94 S.Ct. at 2981; *Baxter v. Palmigiano*, 425 U.S. 308, 322–23, 96 S.Ct. 1551, 1559–60, 47 L.Ed.2d 810 (1976). *See also, Rasheed–Bey*, 969 F.2d at 361; *Cain v. Lane*, 857 F.2d 1139 (7th Cir.1988).

## D. SUMMARY JUDGMENT STANDARDS

■ To be entitled to summary judgment, a party must show by the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, that there exists no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Russo v. Health, Welfare &*

---

**6.** *See e.g., Colon v. Coughlin*, 58 F.3d 865 (2nd Cir.1995) (Remarking that it is not immediately apparent whether Colon's claim, involving as it does an allegation that state prison officials misused an administrative process and subjected Colon to administrative penalties in retaliation for his exercise of constitutional rights, is of a type that falls within the holding of *Heck*.); *cf., Hightower v. Vose*, C.A. No. 93–0286–T, 1995 WL

116395, *2 (D.R.I. March 16, 1995), 1995 U.S.Dist. LEXIS 3368, *4.

**7.** Stone–Bey argues that *Heck* could not be applied retroactively even if it did apply. Such an argument is misplaced as *Heck* itself was applied to the parties in the case, thus opening the door for retroactive application.

*Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993). *See also, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)[8]; and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[9] A party seeking summary judgment bears the initial responsibility of informing the court of the basis for the motion, and identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Celotex,* 477 U.S. at 324, 106·S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A material question of fact is a question which will be outcome determinative of an issue in the case. The facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. If a party meets its initial burden, then the non-moving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The non-moving party may not rest on his pleadings, *Hughes v. Joliet Correctional Center,* 931 F.2d 425, 428 (7th Cir.1991), or upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992). "The days are gone, if they ever existed, when the non-moving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). During its analysis, this court must construe the facts and draw all reasonable inferences in the light most favorable to the non-moving party, *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991), but the Court is "not required to draw every conceivable inference from the record [in favor of the non-movant]—only those inferences that are reasonable". *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991), *Langston v. Peters,* No. 93 C 2607, 1995 WL 461912, *2·(N.D.Ill. Aug. 2, 1995), 1995 U.S.Dist. LEXIS 10985 *10. This court analyzes summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–255, 106 S.Ct. at 2512–2513.

■ Stone–Bey is a party moving for summary judgment that has the burden of proof at trial; therefore, to be entitled to summary judgment on his motion he "must establish affirmatively the lack of 'sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.'" *Reserve Supply v. Owens–Corning Fiberglas,* 971 F.2d 37, 42 (7th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). In other words, Stone–Bey "must show that, on all the essential elements of [his] case on which [he] bears the burden of proof at trial, no reasonable jury could find for [Swihart or Barnes]." *U.S. v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991); *see also Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir.1995); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993); *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264–65 (5th Cir.1991); *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986); *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986); *F.T.C. v. American Standard Credit Systems, Inc.,* 874 F.Supp. 1080, 1086 (C.D.Cal.1994); W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, 'come[s] forward with significant, probative evidence

**8.** For the judicial epilogue of *Celotex,* see *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

**9.** The 1986 Supreme Court trilogy was re-examined in *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Kodak* is that it did not tinker with *Celotex* and *Anderson,* and possibly involves an attempt to clarify *Matsushita.* This view is well supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441 (1992).

demonstrating the existence of a triable issue of fact.'" *Four Parcels,* 941 F.2d at 1438 (quoting *Celotex,* 477 U.S. at 331, 106 S.Ct. at 2557 (Brennan J., dissenting)).

■ Since Stone–Bey has the burden of proof, to defeat his motion for summary judgment, Swihart and Barnes "must produce [ ] significant, probative evidence *only after* the movant has satisfied its burden of demonstrating there is no genuine issue of material fact." (emphasis supplied.) *Chanel, Inc. v. Italian Activewear of Florida, Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991). Thus, if Stone–Bey fails to establish the absence of a genuine factual issue, the motion must be denied even if Swihart or Barnes present no evidence. *Bailey v. McDonnell Douglas Corp.,* 989 F.2d 794, 802 (5th Cir. 1993); *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3rd Cir. 1992); *Houghton v. South,* 965 F.2d 1532, 1536–37 (9th Cir.1992); *Resolution Trust Corp. v. Gill,* 960 F.2d 336, 340 (3rd Cir. 1992); *International Shortstop,* 939 F.2d at 1265.

### E. SWIHART

■ Stone–Bey argues that Swihart violated Stone–Bey's due process rights when Swihart failed to sign his reports, get his supervisor's signature, and to properly document witness statements all of which violated the procedures set forth in the Indiana Department of Correction Adult Disciplinary Policy Procedure (hereinafter "ADPP"). Stone–Bey alleges that each one of these failures are themselves sufficient to deprive him of due process. This court disagrees. First, the occurrence of the omissions themselves is merely a violation of state procedure which is not cognizable under § 1983. *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385; *Pennhurst v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67. Moreover, the omissions were minor, correctable, and corrected.

Second, the total effect of the omissions goes to the weight, not the admissibility of the evidence. Absent fraud, the omissions are better presented as being indicative of insufficient evidence. Stone–Bey has not shown any malice or fraudulent intent by Swihart in his investigation. Bowens admitted in his affidavit attached to Stone–Bey's Motion for Summary Judgment that a "falsely fabricated a untrue allegation [was made] against offender Lorenzo L. Stone–Bey #10006". Although Bowens admits that he fabricated the story he states that another inmate by the name of Ralph Brown informed Swihart of the threat. Regardless of who actually informed Swihart, there exists sufficient information for a reasonable jury to believe that Swihart performed the investigation in good faith and that his reports were truthful as to the statements made by the inmates. Stone–Bey's Motion for Summary Judgment as to Swihart is **DENIED.** Since Swihart's omissions only affect the weight of the evidence before the CAB, the proper challenge is that Barnes misinterpreted the sufficiency of the evidence and not that the investigator was inadequate in collecting it.

Finally, to the extent that Stone–Bey is attempting to pin the blame on Swihart for the adequacy of his Notice of Disciplinary Hearing, Stone–Bey loses since this court finds the notice adequate. Swihart's motion for summary judgment is **GRANTED** and he is **DISMISSED.** The Clerk shall enter judgment accordingly.

### F. BARNES

The Notice of Disciplinary Hearing provided adequate notice and allowed Stone–Bey to produce an adequate defense. Stone–Bey knew that at least one of the witnesses had to be Bowen. The spartan description is reflective of the simpleness of the alleged violation. There was no constitutional error in not dismissing the case on that basis.

■ Although it would have been more desirable for Stone–Bey to receive a written copy of the statements of his three witnesses, Stone–Bey admitted that Barnes read the statements aloud at the CAB hearing. *Affidavit of Stone–Bey, March 8, 1995 Motion for Summary Judgment.* Stone–Bey has not shown he or his lay-advocate were incapable of understanding or responding to Barnes' oral narration of the statements. There was no Constitutional error in not giving Stone–Bey a copy of the witness statements.

For the same reasons that Swihart was not liable simply because the omissions occurred, Barnes is also not liable. The omissions themselves were violations of state procedural law. This court does not judge violations of state procedural law. There is no merit to this argument.

The remaining issues merit further discussion. Stone–Bey questions the sufficiency of the evidence in light of the recanted statement and the adequacy of the written record. The heart of Stone–Bey's complaint is that he was convicted on the testimony of one person who has since recanted his story. Even though the Report of Hearing indicates Barnes relied upon a "witness statement", no such statement appears in the record. Speculation upon Bowens' affidavit and Stone–Bey's December 16, 1993 Summary Judgment Brief at p. 3. might lead one to think of inmate Brown or McKinney as the source of the missing statement, but such is admittedly pure speculation. All of the parties refer to witnesses and their respective statements, but no such statements appear on the record. This court is not even given the name of a witness or informed in the alternative that the witness remains confidential. Bowens' now recanted statement as reported by Swihart is the only evidence of Stone–Bey's guilt. Thus, this court must decide (1) if Bowens' alleged statement by itself is sufficient to sustain a finding of guilt, and (2) if Barnes gave a clear indication of why he disbelieved the recanted statement of Bowens.

### 1. SUFFICIENCY OF THE EVIDENCE

 In *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the court discussed the sufficiency of the evidence required to support a prison disciplinary board finding of guilt. Noting that "the requirements of due process are flexible and depend on a balancing of the interests affected by the relevant govern-

ment action," *Id.* at 454, 105 S.Ct. at 2773, (citations omitted) the Court held that the deprivation of a liberty interest "does not comport with the minimum requirements of procedural due process, unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* (citations omitted).

The Court explained ·further:

Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is, whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.... The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

*Id.,* at 455–456, 105 S.Ct. at 2773–2774. (citations omitted). The "some evidence" standard requires the court to ask if "there is *any* evidence in the record that could support the [CAB's] [ ] conclusion." *Id.* Only if no reasonable adjudicator could find the inmate guilty of the offense on the basis of the evidence presented will the court overturn a CAB's finding of guilt. *Henderson v. United States Parole Commission,* 13 F.3d 1073, 1077 (7th Cir.) [10]

In *Ticey v. Peters,* 8 F.3d 498 (7th Cir. 1993), in a petition of habeas corpus attacking his criminal conviction Ticey questioned whether "recanted statements provided sufficient evidence of guilt to comport with the guarantees of due process (i.e., on the basis of the recanted statements, could any rational finder of fact have found Ticey guilty

---

10. *See, e.g., Hamilton v. O'Leary,* 976 F.2d 341 (7th Cir.1992) (Where weapons could have been tossed in a vent by any one of 32 inmates, then there is only a 3.1% chance that the accused is guilty; court doubted that 3.1% chance is "some evidence" of guilty. Nevertheless, court found

that argument had been waived and affirmed disciplinary board. In dissent, Chief Judge Posner suggested that even 12.5% chance of guilt was insufficient, but he also hinted that collective guilt might be sufficient to satisfy due process)

beyond a reasonable doubt).'' Resolving that question in the affirmative, the Court indicated that it looked to whether:

> 1) the declarant was available for cross-examination; 2) the statement was made shortly after the events related and was transcribed promptly; 3) the declarant knowingly and voluntarily waived the right to remain silent; 4) the declarant admitted making the statement; and 5) there was some corroboration of the statement's reliability. *Vogel* [*v. Percy* ], 691 F.2d [843,] at 847 [ (7th Cir.1982) ] (*citing United States v. Leslie*, 542 F.2d 285 (5th Cir. 1976)). *All the factors focus on the reliability of the statement and the fairness of the circumstances under which the statement was made.*

*Ticey*, 8 F.3d at 501. The court made it clear that the factors ''serve only as guidelines'' *Id.* at 502, and that they ''were not meant to be a litmus test for the admissibility (and reliability) of a prior unsworn inconsistent statement.'' *Id.* at 501. The court cautioned against an overly strict application of the factors and made it clear that ''[c]redible testimony of one identification witness is sufficient to support a conviction.'' *Id.* at 503. (*citing Wandick v. Chrans*, 869 F.2d 1084, 1089 (7th Cir.1989)). It also noted ''the judiciary's wary reception of recantations.'' *Id.* (*citing United States v. Badger*, 983 F.2d 1443, 1456 (7th Cir.1993)).

 Obviously, the due process required in a prison disciplinary proceeding ranks below that required in a criminal trial. *Lenea v. Lane*, 882 F.2d 1171 (7th Cir.1989). Therefore, if the factors are ''merely'' guidelines for underlying convictions, they are even more flexible in the context of a prison disciplinary hearing. Nevertheless, they do indicate that reliability is the touchstone by which a recanted statement should be judged. There is no dispute that the statement was made, *See* Affidavit of Bowens, and the need for cross-examination was ameliorated by Bowens admitting that he made to statement to help him beat a prior accusation of illegal possession.[11] There is no dispute that the alleged fabrication was recorded by Swihart shortly after it was made. Bowens as a victim of the threat had no right to remain silent and although he denied he informed Swihart he did admit to falsely accusing Stone–Bey. The only alleged fabrication in this entire case is that Bowens was threatened by Stone–Bey. Stone–Bey points to no other fabrication. Therefore, Bowens' admission that he fabricated a story about Stone–Bey combined with the fact that no other fabrications are at issue here makes Bowens' affidavit insufficient to create a material issue of fact as to whether he actually made a statement that Stone–Bey threatened him. Clearly he did.

 Most importantly, there must be some corroboration of the reliability of the statement. To repeat, reliability is the key to the sufficiency of the recanted statement. It does not take much corroboration. Barnes alleges corroboration, but none appears in the record. Barnes states in his affidavit that he found Stone–Bey guilty by relying in part on the results of a voice stress analysis. Voice stress analysis results are clearly admissible for corroboration in prison disciplinary hearings, *See Lenea v. Lane*, 882 F.2d 1171, 1174 (7th Cir.1989) (remarking: ''In prison disciplinary hearings, polygraphs may corroborate vital testimony or other evidence''), but the case law contemplates some

---

11. While the affidavit of Bowens did not appear at the CAB hearing, Stone–Bey admits in his affidavit attached to his March 8, 1995 Motion for Summary Judgment that Barnes was aware that Bowens admitted the fabrication in order to avoid punishment for his own violation of correctional facility policy. Moreover, there does not appear to be any readily apparent reason why such an accusation would help Bowens ''beat the case'' against him for illegal possession. In his affidavit Bowens had an opportunity to state why he lied. He initially explained that he lied so that he could be checked into protective custody. Bowens then admits in a rambling and largely incoherent statement that he is a homosexual, that another inmate Ralph Brown obtained Stone–Bey's name and number from a bulletin board, and that the fabrication was done out of envy and jealously after a shake-down revealed Bowens in possession of an illegal substance so that Bowens could ''beat the case''. The only possible connection might be that Bowens hoped that the prison staff would believe that the drugs were payment to satisfy the debt and thereby give Bowens' a break by allowing him to go into assumedly less restrictive protective custody instead of disciplinary segregation.

sort of tangible "result". Mere allegations of a test result are insufficient.[12]

Barnes also indicates that he relied upon a witness statement. No witness statement appears on the record. This is not to say that conduct reports must be accompanied by written statements of each and every witness to the event. If the prison official personally witnesses the event and makes a report, then that is a witness statement and without any other complications, that would be sufficient. Nevertheless, the only evidence in this record is recanted hearsay.

This court does not mean to be overly harsh on Barnes. This court can not say that the test results or the witness statements never existed, for they may have been lost by some clerk or inmate. Thus, there is a material question of fact as to whether they existed at all in the first place. Such a question can not be determined from the record now before this court. Barnes has not shown at this stage that the evidence he relied upon was constitutionally sufficient under *Supt. v. Hill* and *Ticey, supra*. But neither has Stone–Bey showed that he is entitled to judgment as a matter of law. A finder of fact could find that a witnesses statements did exist, and that it contained the allegations that Bowens was threatened by Stone–Bey. Stone–Bey's motion for summary judgment as to Barnes is **DENIED**.

### 2. WRITTEN RECORD

██ Even if the recanted statement provides sufficient evidence, Barnes must adequately explain why he chose to reject Bowens' recantation. Barnes is entitled to make a credibility decision *Wade v. Farley,* 869 F.Supp. 1365, 1371 (N.D.Ind.1994), but he must make a decision, he "may not arbitrarily refuse to consider exculpatory evidence simply because other evidence in the record suggests guilt." *Whitford v. Boglino,* 63 F.3d 527 (7th Cir.1995) (*citing Viens v. Dan-*

*iels,* 871 F.2d 1328, 1336 n. 2 (7th Cir.1989); *Smith v. Farley,* 858 F.Supp. 806, 808–09 (N.D.Ind.1993)). In other words, Barnes could not simply rely upon Bowens' first statement without at least addressing the exculpatory evidence (i.e. the recantation).

To his credit, Barnes did not ignore the recantation. His affidavit specifically indicates that he found the recantation incredible due to the signed statement and the voice stress analysis. Here again those documents are missing. The *Whitford* court did not specify if the basis for the articulated reasons had to appear in the record. It merely indicated that the articulation had to be sufficient enough to allow "a reviewing court or agency [to] determine whether the finding was sufficiently arbitrary so as to be a denial of the inmate's due process rights." *Whitford,* 63 F.3d at 536, 1995 U.S.App. LEXIS 20693 at *25 (grammatical adjustments omitted). Although proof of the existence of the missing statements or test results would be more than enough evidence to allow this court to determine that the finding was not so arbitrary so as to be a denial of the inmates' due process, such tangible evidence is not required in the unique and inherently subjective area of credibility determination. Often credibility is determined on things whose existence is never recorded or proved, e.g. body language. On the other hand, an example of unacceptable arbitrariness would be a rejection simply because the inmate was Hispanic, or because of the simple fact that he was an inmate. This court is satisfied that Barnes's credibility determination was not so arbitrary as to violate due process.

To sum up Barnes' situation, he adequately explained why he chose to believe Bowens' first statement and not his recantation. The statement is thus evidence of Stone–Bey's guilt. However, because the statement was recanted, standing alone without corroboration it is insufficient to support a finding of

---

**12.** This court is also intrigued by the Indiana State Prison memorandum submitted by Stone–Bey as an exhibit to his Additional Memorandum in Support of Plaintiff's Motion for Summary Judgment. That memorandum states that "voice stress analysis is . . . never used to determine the guilt or innocence of any individual" and that such tests "prove nothing". Whether the left hand does not know what the right is doing, or whether the memorandum means to say that the prison will only allow them to be used as corroborating rather than direct evidence is not clear.

guilt. Whether the statement actually stands alone is a question of fact that can not be answered at this stage of the litigation.

## G. LIBERTY INTEREST (Part II)

■ However, it is possible that the corroboration question need not ever be answered since this court is not certain that Stone–Bey has any liberty interest in remaining in the general prison population under the reasoning of the recent *Sandin* case. It seems that an ordinary incident of prison life is that inmates who violate prison rules land in disciplinary segregation. *Cf. Rowe v. DeBruyn,* 17 F.3d 1047, 1053 (7th Cir.1994). In *Whitford, supra,* the Court of Appeals ordered the case remanded back to the district court for a finding on whether in light of *Sandin,* Whitford possessed a liberty interest in freedom from placement in disciplinary segregation.

Due to the recentness of *Sandin,* neither party addressed whether Stone–Bey possessed a liberty interest in remaining in the general prison population under *Sandin.* This court declines to speculate as to *Sandin*'s application without adequate briefing by the parties. As articulated above, this court does have concerns about the process Stone–Bey received. Nevertheless, if Stone–Bey does not have a liberty interest in remaining in the general prison population those concerns are of no moment and Barnes is entitled to summary judgment.

Since both sides are represented by excellent counsel, this court feels it would be prudent to set this case for briefing and oral argument. The issue is whether Indiana has conferred by statute or administrative rule or regulation a liberty interest in remaining in the general prison population. The briefing should include specific discussion and citation to the relevant Indiana statutes and administrative rules and regulations that may be responsible for creating a liberty interest. The briefing should explain the difference, if any, between disciplinary and administrative segregation and to what extent, if any, the differing conditions affect a prisoner's liberty interest. It should also discuss whether the length of the segregation has any bearing on the formation of a liberty interest. Finally, the briefing should also discuss how segregation affects an inmates chances for parole and whether that has any bearing on an inmates liberty interest. The above are merely the minimum issues that this court expects to be briefed, of course if relevant to the issue at hand, this court welcomes briefing on any other issues. The importance of this question must not be lost as the resolution may greatly affect many future cases. This court welcomes petitions by interested parties to file amicus curiae briefs.

## V. CONCLUSION

It is the **ORDER** of this court that Defendant Swihart be **DISMISSED** and **JUDGMENT** entered in his favor. It is the **ORDER** of this court that Stone–Bey's March 8, 1995 Motion for Summary Judgment be **DENIED** and his December 16, 1993 Motion **DENIED** as **MOOT**. The parties are directed to file a brief on the issue of whether Stone–Bey has a liberty interest sufficient to trigger due process in the CAB hearing under the recent case of *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The parties shall have until and including November 1, 1995 to file such briefs. If they desire to do so, the parties shall have until and including November 10, 1995 to file their respective reply briefs. Oral argument will be set thereafter at a mutually convenient time.

**IT IS SO ORDERED.**